**KATHERINE PARK**, Petitioner–Appellant, v. **IRWIN TANAKA**, Administrative Director of the Courts, State of Hawai'i, Respondent–Appellee

NO. 16528

(CASE NO. AR 92–0166
Original Case No. 92–01754)

OCTOBER 5, 1993

MOON, C.J., KLEIN, LEVINSON,
NAKAYAMA, AND RAMIL, JJ.

OPINION OF THE COURT BY KLEIN, J.

Petitioner–Appellant Katherine Park appeals from a district court order affirming her license revocation pursuant to Hawai'i Revised Statutes (HRS) chapter 286, Part XIV. (Supp. 1992) (Administrative Revocation Program).[1] Park was arrested for driving under the influence of intoxicating liquor (DUI) in violation of HRS § 291–4 (Supp. 1992)[2] and given a notice of administrative revocation.

---

[1] The Administrative Revocation Program is fully discussed in *Kernan v. Tanaka*, 75 Haw. 1, 856 P.2d 1207 (1993), *cert. denied,* ___ U.S. ___, 114 S. Ct. 1070, 62 U.S.L.W. 3540 (1994).

[2] HRS § 291–4 provides in pertinent part:
 (a) A person commits the offense of driving under the influence of intoxicating liquor if:

Park's license was revoked after an administrative review by the Administrative Driver's License Revocation Office (ADLRO) of the Judiciary of the State of Hawai'i. The revocation was affirmed in an administrative hearing and Park appealed to the district court. The district court affirmed the revocation and Park appealed to this court. The issues on appeal are: (1) whether the Administrative Revocation Program facially violates Park's due process rights; and (2) whether the application of the Administrative Revocation Program violated Park's rights by failing to comply with several statutory requirements.

## I. **Facts**

Police arrested Park on April 23, 1992 for DUI in violation of HRS § 291–4 and issued her a Notice of License Revocation and a thirty–day driving permit, pursuant to HRS § 286–255 (Supp. 1992). She was notified of the implied consent law and submitted to a breath test that showed her blood alcohol content to be .162 percent. The director of the ADLRO reviewed the evidence and revoked Park's license. Park requested an administrative hearing, which was held on May 18, 1992. The hearing officer upheld the revocation and Park requested judicial review. On July 22, 1992, the day of the scheduled hearing, neither petitioner nor her attorney appeared at the hearing and the district court affirmed the revocation.

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or

(2) The person operates or assumes actual physical control or the operation of any vehicle with .10 percent or more, by weight of alcohol in the person's blood.

Park moved the court to reinstate the appeal, but the court declined.

Park now appeals to this court claiming: (1) the Administrative Revocation Program is unconstitutional; (2) the sworn statements of the law enforcement officers are not properly sworn; (3) HRS § 286–259(g) (Supp. 1992) unconstitutionally limits the issuance of subpoenas to those officers who gave sworn statements; (4) the sworn statement of the intoxilyzer supervisor does not fulfill the statutory requirements of HRS § 286–257(a)(2) (Supp. 1992); (5) there was no reasonable suspicion to stop her; and (6) the district court abused its discretion in denying her motion to reinstate her appeal. For the reasons set forth below, we affirm.

## II. Discussion
### A. Constitutionality of The Administrative Revocation Program

The constitutionality of the Administrative Revocation Program was fully considered and resolved in *Kernan v. Tanaka*, 75 Haw. 1, 856 P.2d 1207 (1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1070, 62 U.S.L.W. 3540 (1994). In *Kernan*, we held the Administrative Revocation Program constitutional on its face, and Park presents no argument requiring us to reexamine the holding.

### B. Law Enforcement Sworn Statements

Park's argument that the sworn statements submitted to the ADLRO do not meet the statutory requirements of HRS § 286–257(a) was also fully considered in *Kernan*. The sworn statement forms submitted by law enforcement officers to the ADLRO in DUI cases comport with the statutory requirements. *Kernan*, 75 Haw. at 31–32, 856 P.2d at 1223.

## C. Issuance of Subpoenas

Park argues that HRS § 286–259(g) prohibits the subpoenaing of material witnesses, thereby denying her the right to due process of law. The statute provides in pertinent part that "[u]pon notice to the director no later than five days prior to the hearing that the arrestee wishes to examine a law enforcement official who made a sworn statement, the director shall issue a subpoena for the official to appear at the hearing." HRS § 286–259(g). HRS § 286–259(d)(4) (Supp. 1992),[3] however, gives the hearing officer the general authority to issue subpoenas.

According to Park, HRS § 286–259(g) limits the director's subpoena power to those officials who submitted sworn statements. However, when both HRS §§ 286–259(d) and 286–259(g) are read together, it is clear that, in addition to the officers who are required to be subpoenaed, the director may issue subpoenas to other officers or individuals. Park's contention is therefore without merit.

## D. Sworn Statement of the Intoxilyzer Supervisor

Park next contends that the sworn statement submitted by the intoxilyzer supervisor does not fulfill the requirements of HRS § 286–257(a)(2). Park complains that the sworn statement does not provide facts, as required by the section, for the ADLRO officers to make

---

[3] HRS § 286–259(d) provides in pertinent part:

(d) The director shall conduct the hearing and have authority to:

    \*   \*   \*

(4) Issue subpoenas, take depositions, or cause depositions or interrogatories to be taken.

the required determinations. Park also claims that because the statement was dated several days before her test, there is no evidence that the intoxilyzer was in good working order when she was tested.

HRS § 286–257(a) requires that certain documents and statements be submitted to the ADLRO. HRS § 286–257(a)(2) requires the submittal of:

> The sworn statement of the person responsible for maintenance of the testing equipment stating facts which establish that pursuant to section 321–161 and rules adopted thereunder:
>
> (A) The equipment used to conduct the test was approved for use as an alcohol testing device in this State;
>
> (B) The person had been trained and at the time the test was conducted was certified and capable of maintaining the testing equipment; and
>
> (C) The testing equipment used had been properly maintained and was in good working condition when the test was conducted[.]

HRS § 321–161 (Supp. 1992) directs the State of Hawai'i Department of Health (DOH) to promulgate rules relative to the use of blood alcohol content testing equipment. *See State v. Souza*, 6 Haw. App. 554, 560, 732 P.2d 253, 257–58 (1987). Title 11, chapter 111–2.1(j) and (k) of the rules pertaining to breath testing equipment maintenance and repair, promulgated by the DOH, require:

> (j)  Testing for accuracy or calibration of all breath testing instruments and related accessories employed pursuant to this chapter shall comply with the following:
>
>> (1)  The supervisor shall assure that testing for accuracy or calibration is done;

(2) Calibration testing shall be done not less frequently than every thirty days and after every instance of maintenance or repair;

(3) Methods recommended by the manufacturer or approved by the department for the testing for accuracy or calibration shall be employed;

(4) Results of tests for accuracy or calibration shall be noted in a permanent record, as required by Section 11–111–6(a)(2);

(k) The recommended calibration testing method shall use a minimum of two reference samples of known alcohol concentrations at a known temperature within the range of one hundredths to thirty hundredths per cent weight per volume [0.01% to 0.30% W/V] or higher known alcohol concentrations that are recommended by the breath testing equipment's manufacturer. The results of the analysis shall agree with the reference sample value within the limits of plus or minus one hundredths per cent weight per volume [±0.01% W/V] or such limits set by the director.

Administrative Rules of the State Department of Health (ARSDH), Title 11, chapter 111–2.1(j) and (k) (1986). Finally, the sworn statement form for the intoxilyzer supervisor provides:

1. I am a duly certified intoxilyzer supervisor trained to maintain and verify the accuracy of Intoxilyzer Number _____ (Serial Number). This Intoxilyzer, used to test the arrestee, is an alcohol testing

device approved for use in the State of Hawai'i pursuant to Section 321–161 of the Hawai'i Revised Statutes.

2. The Intoxilyzer used had been in proper working order when the test was conducted.

When a supervisor tests a machine and determines that it is functioning properly, the supervisor completes, signs, and dates the sworn statement form. A copy of this statement is submitted for every arrestee tested on that machine, pursuant to HRS § 286–257(a)(2), until the supervisor next tests the machine. Thus, the supervisor's statement is in effect prior to the date that an arrestee is tested. Park complains that because of the date differential, and the wording of the statement itself, the requirements of HRS § 286–257(a)(2) were not fulfilled in her case.

ARSDH Title 11, chapter 111–2.1(j)(2) creates a presumption that the intoxilyzer machine is working properly thirty days from and after the date that the supervisor tests it for accuracy. Thus, although the date on the sworn statement precedes the date on which an arrestee is tested, as long as the arrestee's test date is within the thirty–day period covered by the sworn statement, the instrument is presumed to be working properly. *See* ARSDH, Title 11, chapter 111–2.1(j)(2), *supra.* Therefore, given a valid sworn statement, the burden is on the arrestee to adduce evidence that the machine was not working properly at the time of the arrestee's test for blood alcohol content.

The requirements of HRS § 286–257(a)(2)(A) and (B) are satisfied by the first part of the supervisor's sworn statement. The statement that "[t]he Intoxilyzer used ha[s] been in proper working order when the test was

conducted" presupposes that the supervisor tested the machine and that it was working properly, thus fulfilling the requirement of HRS § 286–257(a)(2)(C).

We hold that the standard form submitted by the intoxilyzer supervisor states sufficient facts to comply with the requirements of HRS § 286–257(a)(2) and that the instrument is presumed to be properly functioning for thirty days after its successful testing for accuracy. In the instant case, the supervisor's sworn statement was dated April 20, 1992, and Park was tested on April 23, 1992, well within the thirty–day window. Thus, the requirements of HRS § 286–257(a)(2) were met.

### E. **Reasonable Suspicion to Stop**

Park next argues that she was stopped without reasonable suspicion by a police officer and that her license revocation should be reversed because the requirements of HRS § 286–257(a)(1)(A)[4] were not satisfied. The record reveals that the officer first noticed Park when she attempted to exit her parallel parking space. He then followed her as she made a right turn at the next intersection. The officer stated in his report that as Park began to exit her parking space, she partially blocked the next traffic lane, and then stopped for about a minute, causing cars to go around her vehicle. The officer further reported that as Park made the right turn, she turned about half–way

---

[4] HRS § 286–257(a)(1) requires in pertinent part:

(a)  Whenever a person is arrested [for DUI], the following shall be immediately forwarded to the director:

(1)  A copy of the arrest report and the sworn statement of the arresting officer stating facts which established that:

(A)  There was reasonable suspicion to stop the motor vehicle or the motor vehicle was stopped at an intoxication control roadblock[.]

into the second lane of traffic and then swerved back into the far right lane. He then observed Park weaving back and forth while traveling only 20–25 miles per hour. Park testified at the administrative hearing that she began to pull out of the parking space, but had to wait for traffic to pass. She also described the intersection and her destination. Park, however, never denied that she had been swerving.

Based on the testimony of Park and the arresting police officer, we hold that the hearing officer and district court were correct in concluding that reasonable suspicion existed for the police officer to stop Park.

### F. **Motion to Reinstate Appeal**

Finally, Park argues that the district court abused its discretion in denying her motion to reinstate the appeal. Neither Park nor her attorney appeared at the district court hearing and the court affirmed the revocation pursuant to District Court Rules of Civil Procedure Rule 72(h) (1991).[5] Park moved to reinstate the appeal based on the neglect of a secretary at her attorney's office. The secretary apparently placed the notification of the hearing date in another person's file, thus accounting for the confusion.

> A motion to set aside a default entry or default judgment may and should be granted when the court finds (1) that the nondefaulting party will not be prejudiced by the re–opening, (2) that the defaulting party has a meritorious defense, and

---

[5] District Court Rules of Civil Procedure Rule 72(h) provides in pertinent part that "[i]f the petitioner fails to appear without just cause, the court shall find for the respondent."

3) that the default was not the result of inexcusable neglect or a willful act.

***BDM, Inc. v. Sageco, Inc.***, 57 Haw. 73, 77, 549 P.2d 1147, 1150 (1976); ***Dillingham Investment Corp. v. Kunio Yokoyama Trust***, 8 Haw. App. 226, 236, 797 P.2d 1316, 1320 (1990).

Having examined Park's contentions on appeal, we believe that she has no "meritorious defense" and that the outcome of her appeal would be no different if reinstated. Therefore, we hold that Park fails to meet the second prong of the *BDM* test and that the district court did not abuse its discretion in denying Park's motion.

## III. **Conclusion**

This case augments our decision in *Kernan* by establishing that the Administrative Revocation Program does not limit the issuance of subpoenas for an administrative hearing solely to the officials who submitted sworn statements. Furthermore, the sworn statement form submitted by the intoxilyzer supervisor meets the requirements of the Program and creates a rebuttable presumption that the intoxilyzer is working properly for thirty days from and after the day of its testing for accuracy. We affirm the finding of reasonable suspicion to stop Park and hold that Park's motion to reinstate the appeal was properly denied by the district court.

Affirmed.

On the briefs:

*Arthur E. Ross* for petitioner–appellant.

*Edwin L. Baker*, Deputy Attorney General, for respondent–appellee.