961 P.2d 620

**James T. SIMMONS, Respondent–Appellant,**

v.

**The ADMINISTRATIVE DIRECTOR OF the COURTS, State of Hawai'i, Petitioner–Appellee**

**No. 19884.**

Supreme Court of Hawai'i.

June 25, 1998.

Girard D. Lau, Deputy Attorney General, for petitioner-appellee, on the writ.

MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

We granted petitioner-appellee The Administrative Director of the Courts' [hereinafter, Administrative Director] petition for a writ of certiorari to review the decision of the Intermediate Court of Appeals (ICA) in *Simmons v. Administrative Director of the Courts,* No. 19884 (App. Apr. 9, 1998), wherein the ICA vacated and remanded a district court order affirming the Administrative Driver's License Revocation Office's (ADLRO) revocation of respondent-appellee James T. Simmons's driver's license. The ADLRO had revoked Simmons's license pursuant to Hawai'i Revised Statutes (HRS) ch. 286, part XIV (1993) [hereinafter, Administrative Revocation Program]. In its opinion, the ICA held, *inter alia,* that an arrestee is deprived of due process by the ADLRO's practice of initially denying prehearing subpoena requests for relevant witnesses other than law enforcement officials submitting sworn statements until making a relevancy determination at the first scheduled hearing. We disagree. However, for different reasons, we vacate the district court's order affirming Simmons's revocation and remand this case to the district court with instructions to: (1) reverse the ADLRO's decision; and (2) direct that the ADLRO reverse Simmons's revocation and accordingly expunge his record. We further vacate the ICA's opinion and direct that an order depublishing the opinion, pursuant to Rule 2(a) of the Rules of the Intermediate Court of Appeals, be filed concurrently with this opinion.

## I. BACKGROUND

On December 2, 1995, Police Officer Eutiquio Tomimbang was dispatched to the parking lot of the Food Pantry store in Waikīkī, the site of a reported two-car motor vehicle collision. Upon arriving at the site, Officer Tomimbang observed a group of people arguing in the parking lot. After separating the group, a male/female couple told Officer Tomimbang that their car had been damaged while parked in the parking lot. Claiming to have witnessed the collision, a woman by the

name of Angie Costa identified one of the men in the group, Simmons, as the driver of the car responsible for the damage.

Simmons emphatically denied to Officer Tomimbang that he had operated the vehicle, stating that he had been drinking. Officer Tomimbang thereafter arrested Simmons for driving under the influence (DUI), in violation of HRS § 291-4,[1] and issued a Notice of License Revocation and a thirty-day driving permit, pursuant to HRS § 286-255.[2] Although notified of the implied consent to submit to a blood or breath test and the penalties for refusing to take either test, Simmons refused to be tested.

Upon review of the evidence, the Director of the ADLRO [hereinafter, Director or director] revoked Simmons's license. Pursuant to Simmons's request, an administrative hearing was scheduled for January 24, 1996 [hereinafter, Hearing I]. On January 6, 1996, Simmons submitted a one-page form document produced by the ADLRO, entitled "Request For Subpoenas To Be Issued" [hereinafter, Subpoena Request I]. Under the section stating "I request that subpoenas be issued to the following parties (indicate complete name and address of each party)," Simmons identified four individuals, providing a brief comment as to each of their alleged relevancy:

[1.] Angie Costa, [Costa's address]—only witness to identify [Simmons] as driver of vehicle. [Simmons] denied being driver of vehicle.

[2.] Adam Jacobs, [Jacobs' address]—owner of vehicle involved in the accident and present at the scene. Has relevant evidence to give about damage to his vehicle and whether [Simmons] can be identified as driver of other vehicle.

[3.] Officer [Tomimbang], Main Station, arresting officer.

[4.] Officer M. Kono, Main Station, assisting officer, present at the scene, observed [Simmons] and took statement from [Costa]. His report is part of police report in ADLRO file.

At the time, the ADLRO's prehearing practice was to grant only those requests for subpoenas which were addressed to law enforcement officials who submitted sworn statements.[3] Requests for other witnesses

---

1. HRS § 291-4 (1993) provides in pertinent part that:

 **Driving under the influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:
 (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty[.]

2. HRS § 286-255 (1993) provides that:

 **Arrest; procedures.** Whenever a person is arrested for a violation of section 291-4, on a determination by the arresting officer that:
 (1) There was reasonable suspicion to stop the motor vehicle, or that the motor vehicle was stopped at an intoxication control roadblock established and operated in compliance with sections 286-162.5 and 286-162.6; and
 (2) There was probable cause to believe that the arrestee was driving, operating, or in actual physical control of the motor vehicle while under the influence of intoxicating liquor;

the arresting officer shall immediately take possession of any license held by the person and request the arrestee to take a test for concentration of alcohol in the blood. The arresting officer shall inform the person that the person has the option to take a breath test, a blood test, or both. The arresting officer shall also inform the person of the sanctions under this part, including the sanction for refusing to take a breath or a blood test. The arresting officer shall then complete and issue to the arrestee a notice of administrative revocation and shall indicate thereon whether the notice shall serve as a temporary permit. The notice shall serve as a temporary permit, unless at the time of arrest the arrestee was unlicensed, the arrestee's license was revoked or suspended, or the arrestee had no license in the arrestee's possession.

3. When a person is arrested for DUI, HRS § 286-257 (1993) requires that the following documents be immediately forwarded to the director: (1) the arrest report and the sworn statement of the arresting officer; and, where the arrestee submits to a breath test establishing an alcohol concentration of .08 or more, (2) the sworn statement of the person responsible for the maintenance of the breath testing equipment; and (3) the sworn statement of the person who conducted the test to determine alcohol concentration. *See* HRS §§ 286-257(a)(1), (2), and (3).

would initially be denied until the first scheduled hearing, whereupon a hearing officer would determine whether such other witness were relevant. Thus, the hearing officer appointed to decide Simmons's administrative hearing granted Simmons's subpoena request only with respect to Officer Tomimbang.

Simmons, however, chose not to serve Officer Tomimbang, explaining at Hearing I as follows:

[Counsel for Simmons]: ... I requested, as you can see from my subpoena request the first and most important witness was [Costa], who is the only witness who identified my client as driving the vehicle.

My client, in the arrest report my client is denying being the driver. The so-called arresting officer had no knowledge about whether my client did or didn't drive the vehicle, except what [Costa] said. She is certainly a relevant witness, so I requested her, the arresting officer, Adam Jacob[s], who is also the owner of the vehicle and was involved in the so-called accident, I wanted to ask him questions relevant to his observations at the scene, because he's obviously also a relevant witness about whether it [sic] was, in fact, any damage to his car, whether he saw my client driving, damaged his car, talked to my client.

Then, I subpoenaed the arresting officer and also the assisting officer who was also present at the scene and made observations at the scene. In fact, he event [sic] took the statement from witness, Costa.....

I think all of these witnesses are relevant witness [sic]. I made it very clear on my request that they were relevant witnesses and that I had a right to subpoena them. All these subpoenas were denied to me, except for the arresting officer. I didn't serve the arresting officer a subpoena, because without the other witnesses, especially [Costa and Jacobs], I have nothing to ask the arresting officer. His testimony would only be relevant once I had my subpoenas for the other much more important witness [sic], namely [Costa] and [Jacobs].

Also, I wouldn't be able to compare the arresting officer's observations with the assisting officer's observations. So on that basis, I didn't serve his subpoenas.

Pointing out that "the requested subpoenas were non sworn statement makers," the hearing officer ruled that the initial denial of those subpoenas was proper. The following colloquy ensued:

[Counsel for Simmons]: ... By the way, also, simply because my requested subpoenas were for people who didn't submit sworn statements, I don't think that is any basis of denying the subpoena. I may [sic] a clear factual showing on my request as to why I wanted them. Any person reviewing this document could easily compare my factual statements to the police report to verify that they were true, which they are true. So the subpoenas, simply because these witnesses aren't sworn statement witnesses doesn't mean they can't be subpoenaed prior to the hearing.

I think what the legislature had in mind for these hearings was that they be prompt, that we be entitled to due process initially and not some vague time in the future, based on unreasonable continuances, or whatever. So I don't think there is any reasonable basis for denying these subpoenas, so that my client could have a hearing today as he's entitled.

HEARING OFFICER: Well, generally, the procedure is to have the sworn statement makers in and at this point, I don't have any evidence before me to determine whether or not the arresting officer actually spoke with the arrestee personally, for example, to determine whether or not these other witnesses would be necessary.

I don't have any information before me to determine whether, as you indicated, you don't even know whether or not [Jacobs] saw the arrestee.

Will any evidence be presented to indicate whether or not [Jacobs] was actually observing the arrestee or not during any—

[Counsel for Simmons]: It is not clear to me from the police report. I know from the police report, it appears that [Costa] is the only person who saw him drive, the only person, not the arresting officer, not anybody. [Jacobs] may or may not have,

it's not clear from the report, which is why I wanted—one of the reasons I wanted him subpoenaed. But it's very clear that the only person who saw him supposedly driving was [Costa] and there is a statement in the report by my client that he denies being the driver. So there is obvious relevance there.

At the close of Hearing I, the hearing officer ruled to continue the case for further hearing. Although the hearing officer granted Simmons's request to subpoena Costa to be present at the continued hearing, the hearing officer stated that she would take "the other requests under submission and/or until further evidence determines whether or not those witnesses are necessary." The hearing officer further stated that the continuance would be an "arrestee's continuance" and not a "director's continuance."[4] Objecting to an arrestee's continuance, Simmons stated:

> [Counsel for Simmons]: I object to an arrestee's continuance. First of all, I validly requested, absolutely clearly on my request why I needed [Costa] here, and the other witnesses. It's absolutely clear that I had the right to have them here. There is no basis whatsoever—I'm not asking for a continuance, you guys goofed, it's your job to make it right. If you want to—I requested, we're here, we're here for a hearing, which we're entitled to under the statute. You denied me my request for subpoenas, which were perfectly valid and for which I made a perfectly valid factual statement, which anybody with an eyeball can read and see that it is perfectly valid.
>
> If you want to continue this case—first of all, I don't even think the continuance is a good cause continuance, because these witnesses should have been subpoenaed for the first go around, namely today. If

there is going to be a continuance, it's got to be a Director's continuance. There is no fault on our part and there is no fault—there is no reason for us to be required now to serve witnesses who we validly requested the first time around.

> If you want to correct the error that was made by the [ADLRO] by refusing us subpoenas in the first go around, I think you have to do that, it's a denial of due process if you don't. That's a Director's continuance, it's not our fault.
>
> So we're not asking for an arrestee's continuance. We're not asking, we have a right to due process of law as the courts have so held.

The hearing officer nonetheless ruled that the matter would be continued as an "arrestee's continuance."

Simmons was notified by letter dated January 26, 1996 that the hearing would be continued to February 7, 1996 [hereinafter, Hearing II]. The letter also informed Simmons:

> If you would like to have any subpoenas issued, you must make the request at least five days prior to your hearing. Copies and/or subpoenas are ready and available for pick up on the day of your request or next business day. Please be advised that this office will not contact you when the documents are ready for pick up. You are responsible for service of the subpoenas.

On January 26, 1996, Simmons submitted a second ADLRO Request For Subpoenas To Be Issued form [hereinafter, Subpoena Request II], again asking that subpoenas be issued to Costa, Jacobs, and Officers Tomimbang and Kono. His request was granted only with respect to Costa and Officer Tomimbang. The subpoenas were ready on January 26, 1996 and were picked up by Sim-

---

4. HRS § 286-259 (1993) governs administrative hearing procedure, providing in pertinent part that:

> (j) For good cause shown, the director may grant a continuance either of the commencement of the hearing or of a hearing that has already commenced. *If a continuance is granted at the request of the director, the director shall extend the validity of the temporary permit for a period not to exceed the period of the*

*continuance. If a continuance is granted at the request of the arrestee, the director shall not extend the validity of the temporary permit.* For purposes of this section a continuance means a delay in the commencement of the hearing or an interruption of a hearing that has commenced other than for recesses during the day or at the end of the day or week.

(Emphasis added.)

mons on February 7, 1996, just prior to Hearing II.

Simmons failed to serve either Costa or Officer Tomimbang, and neither Costa nor Officer Tomimbang were present at Hearing II. Arrestee Simmons also failed to appear at the hearing. As for Simmons's absence, counsel for Simmons [hereinafter, Counsel] explained:

[Counsel]: ... [M]y client is in the Navy, and I tried contacting him yesterday and again this morning, both by beeper and by his phone. If I'm not mistaken, I think it's one of those boat phones. When the boat's in you can get somebody, ... when the boat is not in, nobody even answers the phone. He hasn't been around.

I was just calling to remind him of the hearing date and there is no answer. My guess it that he got—this happens every once in awhile [sic] to me with Navy guys, they get shipped, especially if they're not on a boat, again, this is my guess, that he got shipped out probably for a two or three week period, it's usually what it is. They go out and they do runs on the boats and that kind of thing.

He may or may not have had a chance to call me, or may not have even thought of that, because he had this thing come up, that is my guess. So I'd be asking for a short continuance on that basis, because at least I want to find out if that is true or not.

Explaining his failure to serve Costa, Counsel stated:

[Counsel]: ... [Costa], I've been trying to—before even subpoenaeing ·[sic] her, I've been trying just to talk to her. She has no phone number, she lives in a secured building in Waikiki. I've been trying to contact her without—I thought up until now it was just I was just having bad luck. Again, this morning, in fact, I picked up the subpoena this morning. I figured, well, what the hell, if she's around, I'll serve it on her. I actually got her on the code-a-phone this morning about 8:30 or 8:00, whenever that was. As soon as she found out who I was, she clicked off and refused to talk to me.

So I think I'm going to have trouble serving this woman, and I'm not quite sure what I'm going to do about it, because if she's going to hide out in her building, she's not going to respond to any of my messages, I don't know how I'm going to get her, but I'd like to take another shot at it. It's going to be an extremely expensive proposition.

I don't even know what she looks like. So I don't know how my sherif [sic], even if I let the sherif [sic] do it personally, I don't know how he's going to do it, because we don't know what she looks like, she refuses to talk to me. . . .

Reluctant to grant a continuance, the hearing officer stated, "I don't have anything before me to indicate why this matter should be continued." The following colloquy ensued:

[Counsel]: A couple of reasons.

HEARING OFFICER: The arrestee, you are his representative, so you are [sic] on his behalf.

[Counsel]: Right, but I may need him to testify, it depends on what happens, but I think what happened with him is, that he's not here.

HEARING OFFICER: Okay. There doesn't appear to be any reason in terms of—you're not even sure why he's not here, but in any event, he was here at the previous hearing and no testimony was presented there.

[Counsel]: That's because they didn't get the witnesses, the subpoenas we wanted.

HEARING OFFICER: Okay, but the witness was here, you had the opportunity to present testimony at that time.

[Counsel]: You mean, for him?

HEARING OFFICER: That's correct. If you wished to present testimony—

[Counsel]: I'm not going to present testimony from him until I have all my validly subpoenaed witnesses subpoenaed and testified first.

HEARING OFFICER: That is counsel's choice that you had made that decision. He was here, he was able to present

testimony, he's not here at this hearing and you are his representative.

[Counsel]: It wasn't counsel's choice. I made a valid request for a valid witness to the [ADLRO], it was denied to me on the first go around. I put clearly in my initial request for subpoena, this was the only witness who was an eye witness and yet the subpoena was refused to me. There is no requirement that I put my client on until I have all my validly issued subpoenas issued.

HEARING OFFICER: And there is, likewise, no requirement that you must have them according to your wish to have them, and whatever.

The hearing officer granted Counsel a short recess to attempt to locate Simmons; Counsel was unsuccessful. The hearing officer thereafter closed the proceedings, finding no good cause to continue Hearing II due to the absence of any of the witnesses.

On February 13, 1996, the hearing officer sustained the administrative revocation of Simmons's driver's license.[5] In her Findings of Fact, Conclusions of Law, and Decision, the hearing officer explained her initial denial of Simmons's request for subpoenas to be issued to Costa, Jacobs, and Officer Tomimbang:

This Hearing Officer finds that the initial administrative decision to deny the Arrestee's initial request for these discretionary subpoenas was proper. The proper place to make requests for discretionary subpoenas are at the hearing. *See, e.g., Merryman v. Tanaka,* AR 93–0010 (March 9, 1993). The [hearing officer] *may* issue subpoenas to non-sworn statement makers, however, it is discretionary. *See Renn v. Tanaka,* AR 92–0182 (August 13, 1992).

At [Hearing I], Counsel provided an offer of proof for Costa and this Hearing Officer was able to determine that a subpoena may issue as a result, and granted Counsel's request for Costa's subpoena. The subpoenas for Jacobs and Officer Kano [sic] were again denied because this Hearing Officer found that the offers of proof were insufficient and cumulative.

A subpoena should be issued in the situation where the witness has any relevant information to offer but not in the "fishing expedition" context. *Lee v. Administrative Director of the Courts,* JR 95–0001 (February 14, 1995). There was no evidence presented to indicate that Jacobs personally observed the Arrestee drive and the offer of proof presented by Counsel regarding the observations could have been addressed through the testimony of the Arresting Officer (sworn statement maker) which subpoena was issued to Counsel. Therefore, this Hearing Officer finds that Officer Kano's [sic] testimony would have been cumulative of the subpoenas that were already issued and that it is mere speculation that Jacobs personally observed the Arrestee absent any evidence to the contrary and denies these requests for subpoenas.

Simmons appealed to the district court of the first circuit, and, on April 25, 1996, the district court affirmed the administrative revocation of his driver's license. Simmons thereafter appealed to the ICA which, upon perceiving a due process violation, *see* discussion *infra* section II.A.2, (1) vacated the district court's (a) April 25, 1996 Decision and Order Affirming Administrative Revocation, and (b) April 25, 1996 Judgment on Appeal, and (2) remanded the case to the district

---

**5.** We note that the revocation of Simmons's driver's license was affirmed in accordance with HRS § 286–259(e) (1993), which provided in pertinent part that:

The director shall affirm the administrative revocation only if the director determines that:

(1) There existed reasonable suspicion to stop the motor vehicle or the motor vehicle was stopped at an intoxication control roadblock . . .;

(2) There existed probable cause to believe that the arrestee drove, operated, or was in actual physical control of the motor vehicle

while under the influence of intoxicating liquor; and

(3) The evidence proves by a preponderance that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having an alcohol concentration of .10 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.

We note further that the revocation period for Simmons's driver's license was one year, from January 2, 1996 to January 1, 1997.

court with instruction to reverse the hearing officer's February 12, 1996 Findings of Fact, Conclusions of Law, and Decision.

On May 13, 1998, the Administrative Director timely petitioned for a writ of certiorari, which we granted on May 21, 1998.

## II. *DISCUSSION*

### A. *The ICA's Decision*

Construing our decision in *Biscoe v. Tanaka*, 76 Hawai'i 380, 878 P.2d 719 (1994), the ICA begins its discussion in *Simmons* by opining that

> [t]he test for determining whether a subpoena should be issued to an individual to secure the individual's presence at an administrative revocation of driver's license hearing ... involves a two step inquiry: (1) Does the individual possess any relevant evidence? and (2) Was the subpoena properly requested? If the answer to both of the foregoing questions is yes, the refusal of a hearing officer to issue the requested subpoena would constitute an abuse of discretion.

*Simmons*, slip op. at 17–18.

Examining the record pursuant to this standard, the ICA determined that Costa and Officer Kono clearly possessed relevant evidence from the outset;[6] moreover, Subpoena Request I was properly made.[7] The ICA thereby held that the hearing officer abused her discretion in denying Subpoena Request I with respect to Costa and Officer Kono. *Simmons*, slip op. at 22–23.

The ICA then turned to the ADLRO's policy of initially denying all prehearing subpoena requests for witnesses other than for law enforcement officials submitting sworn statements. The ICA pointed out that:

> The record in this case indicates that when a DUI arrestee requests an administrative hearing to contest the administrative revocation of his or her license, the ADLRO initially schedules a hearing on the arrestee's case within the mandated time period.[8] Further, when the arrestee requests that subpoenas be issued to certain individuals, compelling them to appear at the scheduled hearing, the ADLRO's practice is to grant only those requests for subpoenas which are addressed to law enforcement officials who submitted sworn statements. In cases where there are other potentially relevant witnesses, the ADLRO will initially deny the requests for issuance of subpoenas compelling these witnesses' attendance at the scheduled hearing. Subsequently, when the scheduled hearing is held, the hearing officer will entertain arguments on the denied subpoena requests. If the hearing officer thereafter decides to issue any of the requested subpoenas, the ADLRO will always continue the hearing to allow the subpoenas to be served. The current practice of the ADLRO thus makes it the norm to continue hearings, rather than the exception. Moreover, when the arrestee requests the subpoena, the continuance is

---

6. With respect to Costa, the sworn statement of Officer Tomimbang indicated that Simmons denied being the driver of the car but was positively identified as the driver by Costa. Costa was also the person to report the collision to police. As for Officer Kono, given that Officer Kono had taken Costa's statement and independently observed signs of Simmons's intoxication, Officer Kono was also a relevant witness.

We note that the ICA determined Jacobs not to be a relevant witness based on the fact that nothing in the record indicated that Jacobs "possessed any evidence relevant to the questions of whether Simmons was the driver of the car which collided with Jacobs' car or whether Simmons was DUI." *Simmons*, slip op. at 22.

7. Considering that Subpoena Request I stated the name and address of each individual to be

subpoenaed and also provided the reason that the individual was relevant to the case, the ICA held that the request had therefore been properly made. *Simmons*, slip op. at 24.

8. HRS § 286–259(a) requires that an administrative hearing to review the Director's administrative revocation of an arrestee's driver's license "shall be scheduled to commence no later than twenty-five days from the date the notice of administrative revocation was issued. The director may continue the hearing only as provided in subsection (j)." HRS § 286–259(j) provides in relevant part that "[f]or good cause shown, the director may grant a continuance either of the commencement of the hearing or of a hearing that has already commenced."

designated an "arrestee's continuance" and no extension of the arrestee's thirty-day temporary driver's permit is allowed.

*Simmons,* slip op. at 26–27.

Convinced that the ADLRO's policy is "clearly improper" and serves to deprive an arrestee of due process, the ICA stated:

In order to comport with due process protections, an arrestee who has requested an administrative revocation hearing must be able to prepare his defense. *Biscoe v. Tanaka,* 76 Hawai'i at 384, 878 P.2d at 723. To prepare his defense and thereby ensure that his or her rights are adequately protected, the arrestee is entitled to have subpoenas for relevant witnesses issued, compelling the witnesses' appearance at the scheduled hearing. *Id.* at 385, 878 P.2d at 724.

*Simmons,* slip op. at 27.

The ICA held:

Where a hearing officer refuses to issue properly requested subpoenas for relevant witnesses prior to the scheduled hearing, the hearing officer abuses his or her discretion. [*Biscoe,* 76 Hawai'i at 385, 878 P.2d at 724]. It logically follows that where a hearing officer waits until the commencement of the scheduled hearing to decide whether particular subpoenas should be issued and then routinely continues the hearing if he or she decides to issue the subpoenas, the continuance is not for good cause and is invalid. If the continuance is invalid, the continued hearing would not comply with the mandatory time requirements set forth in HRS § 286–259 and would therefore be illegal and void.

In this case, the record indicates that Simmons, in anticipation of the January 24, 1996 Hearing, submitted a proper request that a subpoena be issued to compel Costa's and Officer Kono's presence at the hearing. The hearing officer's refusal, prior to the hearing, to even consider whether the subpoenas should be issued, constituted an abuse of discretion, and the hearing officer's subsequent continuance of the hearing in order to permit one of the requested subpoenas to be served did not constitute "good cause" for the continuance. *Aspinwall v. Tanaka,* 9 Haw.App. [396,] 403, 843 P.2d [145,] 148 [ (1992), *cert. denied,* 74 Haw. 651, 845 P.2d 1193 (1993).] Consequently, the hearing was untimely, void, and invalid, *id.,* and the administrative revocation of Simmons' driver's license was void. *Miller v. Tanaka,* 80 Hawai'i [358,] 362, 910 P.2d [129,] 133 [ (App.1995), *cert. denied,* 80 Hawai'i 357, 910 P.2d 128 (1996) ].

*Simmons,* slip op. at 27–28.

We disagree.

B. *Neither Biscoe Nor This Court's Notions Of Due Process Require The Prehearing Issuance Of Subpoenas For Relevant Witnesses Other Than Law Enforcement Officials Submitting Sworn Statements.*

As noted previously, HRS § 286–259 governs the administrative hearing procedure and provides in relevant part that:

(d) The director shall conduct the hearing and have authority to:

(1) Administer oaths and affirmations;

(2) Examine witnesses and take testimony;

(3) Receive and determine the relevance of evidence;

(4) *Issue subpoenas,* take depositions, or cause depositions or interrogatories to be taken;

(5) Regulate the course and conduct of the hearing; and

(6) Make a final ruling.

. . . .

(g) The sworn statements provided in section 286–257 shall be admitted into evidence. *Upon notice to the director no later than five days prior to the hearing that the arrestee wishes to examine a law enforcement official who made a sworn statement, the director shall issue a subpoena for the official to appear at the hearing.* If the official cannot appear, the official may at the discretion of the director testify by telephone.

(Emphases added.)

In *Biscoe,* this court discussed the circumstances under which subpoenas for witnesses

other than the arresting officer should be issued, stating:

> As explained in [*Park v. Tanaka*, 75 Haw. 271, 859 P.2d 917 (1993)], "when both HRS §§ 286–259(d)[ ] and 286–259(g)[ ] are read together, it is clear that, in addition to the officers who are required to be subpoenaed, the director *may* issue subpoenas to other officers or individuals." 75 Haw. at 275, 859 P.2d at 920 . . . . *Thus, the issuance of subpoenas other than those required under HRS § 286–259(g) is left to the discretion of the director.* In order to ensure that an arrestee's rights are adequately protected, the director should issue all requested subpoenas unless the witness does not possess any relevant evidence or the subpoena request is otherwise deficient. If a proper request is made for a subpoena for a relevant witness, the refusal to issue the subpoena would constitute an abuse of discretion.

*Biscoe*, 76 Hawai'i at 385, 878 P.2d at 724 (footnotes omitted) (some emphases in original).

The arrestee in *Biscoe* had submitted a prehearing subpoena request for the Custodian of Medical Records of Straub Clinic and Hospital; the ADLRO denied that request. The request had simply named the Custodian of Records and provided an address, but "neither identified the type of records that the custodian would be required to bring to the hearing nor indicated the date, time, or treatment of the records that Biscoe wished produced." *Id.* We held that the arrestee's request "was so vague that it would have proved useless, even if the subpoena had been issued[,]" *id.;* in other words, the subpoena request was deficient in form. Accordingly, we held that the ADLRO did not abuse its discretion in denying the request.

We do not take issue per se with the ICA's formulation of the test for determining whether a subpoena should be issued to witnesses other than law enforcement officials submitting sworn statements. The problem, rather, is that the ICA misconstrues *Biscoe* to hold that, whenever a subpoena request is in "proper form," an elusive term in itself, (1) the ADLRO must determine, *prehearing,* whether a witness possesses relevant evi-

dence, and (2) any subsequent grant of subpoenas for relevant witnesses is insufficient and violative of due process. Nothing in either *Biscoe* or the statute supports such an expansive holding.

 As stressed previously in both *Biscoe* and *Park,* with the exception of law enforcement officials required to be subpoenaed, HRS § 286–259 affords a hearing officer the authority *and the discretion* to issue subpoenas to other officers and individuals. *Biscoe,* 76 Hawai'i at 385, 878 P.2d at 724; *Park,* 75 Haw. at 275, 859 P.2d at 920. Although we held in *Biscoe* that a hearing officer should issue all requested subpoenas so long as "a proper request is made for a relevant witness," *Biscoe* cannot be fairly nor practically read to require that such subpoenas always be issued prehearing in order to comport with due process.

First, as stated previously, nothing in our jurisprudence pertaining to the Administrative Revocation Program intimates that an arrestee is entitled to present his or her entire case at the initial hearing and that a continued hearing is insufficient to satisfy due process. *See, e.g., Kernan v. Tanaka,* 75 Haw. 1, 856 P.2d 1207 (1993) (holding the Administrative Revocation Program, which provides for continuances, constitutional on its face), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). Indeed, "[d]ue process encompasses the opportunity to be heard at a meaningful time and in a meaningful manner[,]" *id.* at 22, 856 P.2d at 1218 (citations omitted), and the Administrative Revocation Program affords the arrestee an opportunity to examine all relevant witnesses, whether it be at an initial hearing or a continued hearing.

Second, as the Administrator Director's petition points out, it is often difficult, if not impossible, for a hearing officer to make a prehearing determination from the face of a subpoena request whether a certain witness possesses relevant evidence. Whereas we, as an appellate court, have the benefit of hindsight in determining this issue, a hearing officer is often limited solely to a one or two-line subpoena request and a curt written record containing only the arresting officer's police report and sworn statement, and, in

instances where the arrestee submits to a breath test, the sworn statements of the person who administered the breath test and the person who maintains the intoxilyzer. Nevertheless, under the ICA's holding, a hearing officer is compelled to rule as to each witness' relevancy, prehearing, without any opportunity to clarify the arrestee's assertion as to a particular witness's purported relevancy or to clarify the contested issues,[9] which are generally determined at the first hearing. Given the likelihood that some witnesses will be compelled to attend the initial hearing unnecessarily,[10] we believe that the ICA's rule invites poor and uninformed decision making and will unduly lengthen the hearing process, which was clearly intended to be "expeditious." 1990 Senate Journal, at 681 (remarks of Senator Fernandes Salling in favor of S.B. 1148, C.D. 1). Moreover, such a rule is, in any event, unnecessary to preserve an arrestee's right to due process, particularly considering that an arrestee would be able to examine his or her relevant witnesses at a continued hearing.

Based on the foregoing, we hold that the ADLRO's current practice of denying all prehearing subpoena requests for witnesses other than law enforcement officials submitting sworn statements does not violate an arrestee's right to due process. Accordingly, the hearing officer in the instant case acted within her discretion by initially denying Simmons's prehearing subpoena request and making her relevancy determination as to the requested witnesses at the first scheduled hearing.

C. *The Hearing Officer Abused Her Discretion In Designating The Continuance Of Hearing I As An "Arrestee's Continuance."*

■ Notwithstanding that the ADLRO has discretion regarding the timing of its issuance of subpoenas for relevant witnesses other than law enforcement officials submitting sworn statements, we hold, based on the reasons set forth below, that the ADLRO

cannot, at the same time, properly designate a continued hearing to subpoena previously requested, relevant witnesses as an "arrestee's continuance" under HRS § 286–259(j). We therefore further hold that the hearing officer abused her discretion in designating the continuance of Hearing I as an "arrestee's continuance."

1. *Applicable rules of statutory construction*

"We interpret statutes *de novo.*" *Keliipuleole v. Wilson*, 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997) (citing *Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 356, 903 P.2d 48, 52 (1995)). "Our foremost obligation is to ascertain and give effect to the intention of the legislature[,] which is to be obtained primarily from the language contained in the statute itself." *Kawamata Farms, Inc. v. United Agri Products*, 86 Hawai'i 214, 255, 948 P.2d 1055, 1096 (1997) (quoting *State v. Wells*, 78 Hawai'i 373, 376, 894 P.2d 70, 73, *reconsideration denied*, 78 Hawai'i 474, 896 P.2d 930 (1995)).

Although the intention of the legislature is to be obtained primarily from the language of the statute itself, we have rejected an approach to statutory construction which limits us to the words of a statute, for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Thus, the plain language rule of statutory construction[ ] does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

---

9. Contested issues might include intoxication, consent to take a breath test, whether the arrestee was driving, or whether the intoxilyzer was properly functioning.

10. For example, if, at the initial hearing, Simmons had admitted that he had been driving, then it would have been plainly unnecessary to subpoena Costa.

*Sato v. Tawata,* 79 Hawai'i 14, 17, 897 P.2d 941, 944 (1995) (citation, brackets, and ellipses omitted).

### 2. *HRS § 286–259(j)*

As indicated previously, HRS § 286–259(j) provides in pertinent part that:

> For good cause shown, the director may grant a continuance either of the commencement of the hearing or of a hearing that has already commenced. *If a continuance is granted at the request of the director, the director shall extend the validity of the temporary permit for a period not to exceed the period of the continuance. If a continuance is granted at the request of the arrestee, the director shall not extend the validity of the temporary permit. . . .*

(Emphasis added.) Thus, any continuance "granted at the request of the arrestee," to wit, an "arrestee's continuance," serves to penalize the arrestee in that the validity of his or her temporary permit will not be extended.

Applying HRS § 286–259(j) to the instant case, it appears at first glance that the hearing officer appropriately designated the continuance of Hearing I as an "arrestee's continuance." After all, the continuance was arguably requested at the behest of Simmons so that he could subpoena Costa and thereby examine both Officer Tomimbang and Costa as part of his defense. Turning to the policies underlying the Administrative Revocation Program, generally, and HRS § 286–259, in particular, we are apprised, however, of the following. Speaking in favor of S.B. 1148,[11] C.D. 1, the Chairperson of the Senate Transportation Committee, Senator Lehua Fernandes Salling, stated in a floor speech that:

> [T]he bill before us accomplishes three major objectives of the Senate. No. 1, it provides an administrative review and hearing to be completed within 30 days so that the process is expeditious. . . . *No. 2, it requires that a person may have a temporary permit until a hearing has determined his guilt or innocence. If the state requires more time and asks for a contin-*

*uance, the temporary permit will also continue.* We believe that this will be the exception and most cases will be decided within the 30 days. And No. 3, should the state lose on the merits of the case, it will be prevented from bringing the driver to criminal proceedings.

> . . . .

> In closing, let me at least mention one concern that I have about the bill which allows the state to have a continuance if they are not able to go forward with their case in 30 days. The Senate's position was to complete the hearing process in 30 days so that the revocation process was "expeditious." *The law enforcement community wanted to be able to have the continuance to make certain that they could adequately prosecute anyone. And to balance this, we have allowed for the temporary permit to run until the hearing is finally held.*

> . . . .

1990 Senate Journal, at 681 (emphases added).

The above passage illustrates that the legislature was motivated to provide for continuances as a result of the state's concern that it would require "more time" to "adequately prosecute" an arrestee. To "balance" for a state requested continuance, the legislature, presumably in fairness to the arrestee, intended that his or her temporary permit would run until the hearing was finally held.

As indicated previously, the hearing officer in the instant case granted Simmons an "arrestee's continuance" so that Simmons could serve a subpoena upon Costa. A "director's continuance," however, was refused, despite the fact that Simmons had duly submitted his subpoena request for Costa prior to the hearing and that it was the hearing officer who had postponed her relevancy determination as to his requested witnesses until Hearing I. Under these circumstances, we hold that the hearing officer's decision was in error. The need for a continuance was clearly generated herein by the hearing officer's very own actions, to wit, her decision to initially deny Simmons's prehearing subpoena so that a relevancy determination could be made at

---

**11.** The predecessor to the Administrative Revocation Program.

Hearing I. Because the hearing officer essentially needed "more time" to make a relevancy determination as to Simmons's requested witnesses, we hold that, in fairness to Simmons and in accordance with the underlying policies of HRS § 286–259, the continuance should have been designated a "director's continuance."

D. *The Hearing Officer Further Abused Her Discretion In Failing To Issue A Subpoena For Officer Kono.*

█ For the reasons stated by the ICA, *see* supra note 6, we agree that both Costa and Officer Kono possessed relevant evidence bearing on Simmons's case; a subpoena for Officer Kono, however, was never issued. We hold therefore that the hearing officer further erred in failing to issue a subpoena for Officer Kono.

### III. *CONCLUSION*

For the foregoing reasons, we reverse the ICA's decision insofar as it holds that an arrestee is deprived of due process by the ADLRO's practice of initially denying pre-hearing subpoena requests for relevant witnesses other than law enforcement officials submitting sworn statements. However, because the hearing officer abused her discretion in (1) designating the continuance of Hearing I as an "arrestee's continuance" and (2) failing to grant the issuance of a subpoena to Officer Kono, we vacate the district court's order affirming Simmons's revocation and remand this case to the district court with instructions to: (1) reverse the ADLRO's decision; and (2) direct that the ADLRO reverse Simmons's revocation and accordingly expunge his record. We further vacate the ICA's opinion and direct that an order depublishing the opinion, pursuant to Rule 2(a) of the Rules of the Intermediate Court of Appeals, be filed concurrently with this opinion.