878 P.2d 719

**Glenn C. BISCOE, Petitioner–Appellant,**

v.

**Irwin TANAKA, Administrative Director of the Courts, State of Hawai'i, Respondent–Appellee.**

**No. 15999.**

Supreme Court of Hawai'i.

Aug. 10, 1994.

Lloyd A. Poelman (Richard Crisman Linstrom, with him on the brief), Honolulu, for petitioner-appellant.

Edwin L. Baker, Special Deputy Atty. Gen., on the briefs, Honolulu, for respondent-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Petitioner–Appellant Glenn Biscoe appeals from a district court order affirming his driver's license revocation pursuant to Hawai'i Revised Statutes (HRS) chapter 286, Part XIV (Supp.1992) (Administrative Revocation Program or Program).[1] Biscoe was arrested for driving under the influence of intoxicating liquor (DUI) in violation of HRS § 291–4 (Supp.1992) and given a notice of administrative revocation pursuant to HRS § 286–255.

Biscoe's license was revoked after an administrative review by the Administrative Driver's License Revocation Office (ADLRO) of the Judiciary of the State of Hawai'i. The revocation was affirmed in an administrative hearing and Biscoe requested judicial review by the district court. The district court affirmed the revocation and Biscoe now appeals to this court.

### I. Facts

Police arrested Biscoe on September 29, 1991, for DUI after he was involved in a one-car accident in which he drove across oncoming traffic lanes into "three fixed objects." The police issued him a Notice of License Revocation and a thirty-day driving permit. Prior to being taken to the police station, Biscoe was transported to Straub Hospital for treatment of the injuries he sustained in the accident, including one that caused his tongue to bleed. He was notified of the implied consent law and, at the police station, submitted to a breath test that showed his blood alcohol content to be .122 percent. The ADLRO director subsequently reviewed the evidence and revoked Biscoe's license.

Biscoe requested an administrative hearing, which was originally scheduled for October 22, 1991. On that day, he requested that the hearing be continued until "November 13, 1:30PM or after," and his request was granted. Biscoe, however, alleges that he did not discover the new hearing date until November 6, 1991, one week before the rescheduled November 13, 1991 hearing.

---

1. The Administrative Revocation Program is fully discussed in *Kernan v. Tanaka,* 75 Haw. 1, 856 P.2d 1207 (1993).

After discovering the continued hearing date, Biscoe requested seven subpoenas. One requested subpoena, for the "Custodian of Records for Medical Records at Straub Clinic & Hospital," was denied by the ADLRO. Of the six subpoenas that were issued, two were served and the witnesses appeared at the hearing, the sheriff unsuccessfully attempted to serve another two, and Biscoe decided not to serve the remaining two. At the ensuing hearing on November 13, 1991, the hearing officer upheld the revocation. The revocation was subsequently upheld on judicial review by the district court.

Biscoe appeals to this court on the following grounds: (1) the statements of the law enforcement officers were not properly sworn; (2) HRS § 286–257(a)(1) and HRS § 286–258(c)(3) require the submission of a full police report to the ADLRO; (3) the sworn statement of the intoxilyzer supervisor did not fulfill the statutory requirements of HRS § 286–257(a)(2); (4) the placement of the Administrative Revocation Program in the judicial branch of government violates article V, section 6 of the Hawai'i Constitution; (5) the Administrative Revocation Program, as applied, deprived Biscoe of due process of law by failing to provide him with sufficient notice to be able to subpoena witnesses; (6) the hearing officer erred by refusing to issue a requested subpoena; and (7) the transcript of the administrative hearing was improperly allowed into the district court record.

The first three arguments were fully considered and rejected in *Kernan v. Tanaka*, 75 Haw. 1, 32–35, 856 P.2d 1207, 1223–24 (1993) (holding that sworn statement forms submitted by law enforcement officers comport with statutory requirements and statutes do not require submission of the complete police report), *cert. denied*, —— U.S. ——, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994), and *Park v. Tanaka*, 75 Haw. 271, 275–79, 859 P.2d 917, 920–21 (1993) (holding that the intoxilyzer supervisor's standard statement form fulfilled statutory requirements). For the reasons set forth below, we find no merit in Biscoe's other contentions and affirm.

## II. *Discussion*

### A. *Hawai'i Constitution, Article V, Section 6*

Article V, section 6 of the Hawai'i Constitution provides in pertinent part:

All executive and administrative offices, departments and instrumentalities of the state government and their respective powers and duties shall be allocated by law among and within not more than twenty principal departments in such a manner as to group the same according to common purposes and related functions. Temporary commissions or agencies for special purposes may be established by law and need not be allocated within a principal department.

Each principal department shall be under the supervision of the governor and, unless otherwise provided in this constitution or by law, shall be headed by a single executive.

Biscoe argues that the Administrative Revocation Program violates this constitutional provision because the ADLRO is an administrative office that is required to be within the executive branch of government and under the supervision of the Governor.

We address Biscoe's constitutional challenge with the following well-established principles in mind:

(1) legislative enactments are presumptively constitutional; (2) a party challenging a statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt; and (3) the constitutional defect must be clear, manifest, and unmistakable.

*Pray v. Judicial Selection Comm'n*, 75 Haw. 333, 340, 861 P.2d 723, 727 (1993) (quoting *Sifagaloa v. Board of Trustees of the Employees' Retirement Sys.*, 74 Haw. 181, 191, 840 P.2d 367, 371 (1992)) (internal quotation marks and brackets omitted).

Article V of the Hawai'i Constitution sets forth the powers, responsibilities, and structure of the executive branch of the state government. An examination of the language of article V, section 6, along with its history as set forth in the discussions of the constitutional conventions of 1950, 1968 and

1978, demonstrates that that provision was concerned solely with controlling the size and organization of the executive branch. *See* Stand.Comm.Rep. No. 51, in 1 Proceedings of the Constitutional Convention of Hawai'i of 1978 at 613–16 (1980); Stand.Comm.Rep. No. 38, in 1 Proceedings of the Constitutional Convention of Hawai'i of 1968 at 191–96 (1973); Stand.Comm.Rep. No. 67, in 1 Proceedings of the Constitutional Convention of Hawai'i of 1950 at 215–22 (1960). The statutes creating the Administrative Revocation Program, however, clearly place the Program within the judiciary.[2] Thus, because article V, section 6 only applies to the executive branch and places no limits on the judiciary, Biscoe's claim that the Program violates that constitutional provision is without merit.

■ Although the Administrative Revocation Program does not violate article V, section 6, we recognize that the essence of Biscoe's argument is that the Hawai'i Constitution forbids the placement of the Program within the judiciary. We understand this argument to be that placement of the Administrative Revocation Program in the judiciary violates the separation of powers doctrine.

The separation of powers doctrine is not expressly set forth in any single constitutional provision, "[b]ut like the federal government, ours is one in which the sovereign power is divided and allocated among three co-equal branches." *Trustees of the Office of Hawaiian Affairs v. Yamasaki*, 69 Haw. 154, 170–71, 737 P.2d 446, 456, *cert. denied*, 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 192 (1987). Thus, the separation of powers doctrine applies to the Hawai'i state government. However,

[w]ithin the framework of the fundamental doctrine respecting the separation of powers of government, some flexibility must be infused. This was early recognized by the courts and constitutional authorities. "Thus, it is not a correct statement of the principle of the separation of powers to say that it prohibits absolutely the performance by one department of acts which, by their essential nature, belong to another.

Rather, the correct statement is that a department may constitutionally exercise any power, whatever its essential nature, which has, by the Constitution, been delegated to it, but it may not exercise powers not so constitutionally granted, which from their essential nature, do not fall within its division of governmental functions, unless such powers are properly incidental to the performance by it of its own appropriate functions." Willoughby, *Constitutional Law*, § 725, p. 682.

*Koike v. Board of Water Supply*, 44 Haw. 100, 114, 352 P.2d 835, 843 (citations omitted), *reh'g denied*, 44 Haw. 146 (1960).

When a party challenges a statutory scheme that assigns the performance of a particular task to the judiciary, "[t]he test is whether the statute 'authorizes the courts to perform a function so closely connected with and so far incidental to strictly judicial proceedings that the courts in obeying the statute would not be exercising executive or nonjudicial powers.'" *Opinion of the Justices*, 336 Mass. 765, 770, 142 N.E.2d 770, 773 (1957) (quoting *LaChapelle v. United Shoe Machinery Corp.*, 318 Mass. 166, 168, 61 N.E.2d 8, 10 (1945)).

In performing the tasks assigned through the Administrative Revocation Program, officers of the judiciary are required to determine whether the police have proven that: "(1) reasonable suspicion existed to stop the vehicle; (2) probable cause existed to believe the arrestee was driving under the influence; and (3) by a preponderance of the evidence, the arrestee did in fact drive under the influence." *Kernan*, 75 Haw. at 30, 856 P.2d at 1222. In other words, "[t]he reviewing and hearing officers ... are decision makers who review the evidence." *Id.*

The task of reviewing evidence and determining matters such as the existence of reasonable suspicion, probable cause, and proof of facts by a preponderance of the evidence are clearly judicial in nature and do not require officers of the judiciary to exercise executive or nonjudicial powers. Thus, the

---

**2.** HRS § 286–251 defines "director" as "the administrative director of the courts or any other person within the judiciary appointed by the

director to carry out other functions relating to administrative revocation under this part."

placement of the Administrative Revocation Program within the Judiciary does not violate the separation of powers doctrine. *Cf. Commonwealth v. Crowell,* 403 Mass. 381, 387, 529 N.E.2d 1339, 1343 (1988) (rejecting separation of powers argument and noting that when a judge acts pursuant to a statute that "explicitly authorizes and directs a judge to act, in certain circumstances, to suspend a driver's license at arraignment[, that] judge engages in a judicial and not in an executive function").

Moreover, courts in other jurisdictions have recognized that many tasks, such as the revocation of drivers' licenses, may be performed by either the executive or the judicial branch. *See, e.g., Brach v. Chief Justice of the Dist. Court Dep't,* 386 Mass. 528, 538, 437 N.E.2d 164, 170 (1982) ("The subject of license revocation has been assigned legislatively to the executive department.... The Legislature, however, can grant the courts the ability to accomplish the same result under the traditional power of the judiciary over sentencing."); *Appeal of City of Norwalk,* 88 Conn. 471, 477, 91 A. 442, 444 (1914) ("Like the selection, under statutory limitations, of persons suitable to be licensed to sell intoxicating liquors, it is competent for the Legislature to commit such apportionment [of the expenses of building a bridge between a municipality and a street railway company] either to judicial or executive officers as may be found necessary."); *cf. State v. Fahrer,* 212 N.J.Super. 571, 515 A.2d 1240 (1986) (discussing effect of legislative reassignment of task of license revocation for refusing to submit to a breathalyzer test from the Division of Motor Vehicles (executive branch) to the municipal courts (judicial branch)). Thus, it may be that the legislature could properly place the Administrative Revocation Program within the executive branch. It may even be wiser to place the Program there. Our function, however, is not to determine the best allocation of tasks among the branches of government, but is

limited to deciding whether the allocation chosen by the legislature comports with constitutional requirements.

As discussed above, the placement of the Administrative Revocation Program within the judiciary does not violate the separation of powers doctrine, and article V, section 6 of the Hawai'i Constitution does not apply to the judiciary. The Program is presumed to be constitutional and Biscoe has failed to prove beyond a reasonable doubt that it is unconstitutional.

### B. *Sufficient Notice of Administrative Hearing Date*

■ Biscoe next contends that his due process rights were violated because he had insufficient time to properly subpoena witnesses. Biscoe correctly states that a lack of sufficient notice to enable him to prepare his defense or to meet the issues involved would constitute a violation of his due process protections. *See Wong v. Frank,* 9 Haw.App. 249, 261, 833 P.2d 85, 92, *cert. denied,* 73 Haw. 627, 834 P.2d 1315 (1992); *Gabriel v. Gabriel,* 7 Haw.App. 95, 99–100, 746 P.2d 574, 577 (1987). On the facts of the instant case, however, we cannot say that Biscoe was provided with insufficient notice.

Biscoe's initial hearing was set for 9:00 a.m. on October 22, 1991. On that day, Biscoe made a written request that the hearing be continued until "November 13, 1:30PM or after." By requesting that the hearing be continued until November 13, 1991, Biscoe represented that he would be able to prepare his defense by that time. The continuance was granted and the hearing was rescheduled for 1:30 p.m. on November 13, 1991.[3]

Biscoe does not claim that he was unaware that his continuance request was granted, but complains that he was not informed of the continued hearing date and had to take the initiative to discover the date. Despite the fact that he had specifically indicated

---

**3.** The record does not contain any direct evidence that the director granted Biscoe's request. Because Biscoe made his continuance request at the time that the hearing was originally scheduled to occur and the hearing was not held at that time, however, it is evident that the continuance request was granted. Moreover, although

the record does not clearly reveal whether the scheduling of the continued hearing took place simultaneously with the granting of the continuance or was done at another time, the fact that the date and time of the continued hearing were those specified in Biscoe's continuance request suggests the former.

that 1:30 p.m. on November 13, 1991, would be acceptable, however, Biscoe did not contact the ADLRO until November 6, 1991. As Biscoe conceded below, when a party requests a continuance, ascertaining the continued hearing date is a "shared responsibility." Thus, Biscoe's allegedly short notice was due to his failure to contact the ADLRO until a week before the continued hearing date and does not constitute a deprivation of due process.

Moreover, Biscoe has failed to demonstrate that he was prejudiced by the short notice. The only alleged prejudice suffered by Biscoe was the inability to serve subpoenas on two witnesses.[4] Biscoe, however, neither requested a continuance to allow him another opportunity to subpoena the unserved witnesses nor indicated what evidence he expected to elicit from those witnesses. Under these circumstances, Biscoe's inability to serve the two subpoenas does not warrant reversal.

### C. *Issuance of Subpoenas*

In addition to the insufficient notice complaint, Biscoe argues that the ADLRO director improperly refused to issue the subpoena requested for the Custodian of Medical Records of Straub Clinic and Hospital. Because Biscoe's mouth was swabbed at Straub Hospital prior to his breath test for blood alcohol content, Biscoe contends that the medical records would have indicated the extent of blood in his mouth at the time of the breath test and whether an alcoholic substance was used to swab his mouth.

■ As explained in *Park*, "when both HRS §§ 286–259(d) [5] and 286–259(g) [6] are read together, it is clear that, in addition to

the officers who are required to be subpoenaed, the director *may* issue subpoenas to other officers or individuals." 75 Haw. at 275, 859 P.2d at 920 (footnotes and emphasis added). Thus, the issuance of subpoenas other than those required under HRS § 286–259(g) is left to the discretion of the director. In order to ensure that an arrestee's rights are adequately protected, the director should issue all requested subpoenas unless the witness does not possess any relevant evidence or the subpoena request is otherwise deficient. If a proper request is made for a subpoena for a relevant witness, the refusal to issue the subpoena would constitute an abuse of discretion.

■ The only potentially relevant evidence that the Custodian of Records of Straub Hospital could offer would be the records of the treatment of Biscoe's mouth injury received prior to his breath test. Biscoe's rejected subpoena request, however, neither identified the type of records that the custodian would be required to bring to the hearing nor indicated the date, time, or treatment of the records that Biscoe wished produced. The request merely named the Custodian of Records and provided an address. In short, the request was so vague that it would have proved useless, even if the subpoena had been issued. Under those circumstances, the ADLRO director's refusal to issue the subpoena for the Custodian of Records of Straub Hospital was not an abuse of discretion.

### D. *Administrative Hearing Transcript*

■ HRS § 286–259(h), the only statute that addresses the recording of the administrative hearing, simply provides that "[t]he hearing shall be recorded in a manner to be

---

4. Biscoe allegedly only discovered the continued hearing date on November 6, 1991. He requested subpoenas the following day and the subpoenas were issued on Friday, November 8, 1991. The sheriff, however, apparently did not attempt to serve the subpoenas over the weekend or on the following Monday because it was a state holiday. The sheriff did attempt to serve the subpoenas on both November 12, 1991, and November 13, 1991, but was unable to effect service.

5. HRS § 286–259(d) provides in pertinent part:

(d) The director shall conduct the hearing and have authority to:

(4) Issue subpoenas, take depositions, or cause depositions or interrogatories to be taken[.]

6. HRS § 286–259(g) provides in pertinent part:
Upon notice to the director no later than five days prior to the hearing that the arrestee wishes to examine a law enforcement official who made a sworn statement, the director shall issue a subpoena for the official to appear at the hearing.

determined by the ADLRO director." In the instant case, the administrative hearing was tape-recorded and later transcribed by an ADLRO employee. This procedure was, apparently, the "manner" determined by the director. The transcript thereby prepared was made a part of the record of the administrative hearing for purposes of judicial review by the district court.

Citing HRS §§ 606–9 to –13 (1985), District Court Rule 25.1 (1980), District Court Rules of Civil Procedure Rule 28(c) (1981), and the Rules Governing Court Reporting in the State of Hawai'i, Biscoe argues that the transcript was not properly prepared and should not have been considered by the district court. The cited statutes and rules, however, only govern the manner in which depositions and trials or other in-court judicial proceedings are to be recorded. Because administrative hearings held by the ADLRO are neither depositions, trials, nor other in-court judicial proceedings, none of the statutes or rules are applicable. Moreover, the primary purpose of all of the cited statutes and rules is to ensure that complete and accurate records are prepared, and Biscoe has not alleged that the transcripts prepared in the instant case were in any way incomplete or inaccurate.

Biscoe further argues that the due process protections of the United States and Hawai'i Constitutions would preclude the district court from considering a transcript prepared by a "party in interest." Even assuming that this is true, Biscoe's argument that the ADLRO employee who prepared the transcript is an interested party is without merit. Although the Administrative Director of the Courts is a nominal party when judicial review is sought at the district court, there is no evidence that the ADLRO officers and employees have an interest in the outcome of the proceedings. *See Kernan,* 75 Haw. at 31, 856 P.2d at 1222 ("Appellants have failed to show that the ADLRO officers have an interest in the outcome of the matter to overcome the presumption of honesty and integrity that attaches by virtue of their office." (Internal quotation marks and brackets omitted.)).

### III.  *Conclusion*

This case supplements our decisions in *Kernan* and *Park* by establishing that the Administrative Revocation Program does not violate article V, section 6 of the Hawai'i Constitution or the Separation of Powers doctrine. Furthermore, the ADLRO director did not abuse his discretion by failing to issue the requested subpoena, and Biscoe's due process rights were not violated by his inability to serve all of the subpoenas that were issued. Finally, the ADLRO's method of preparing hearing transcripts comports with HRS § 286–259(h), and the district court properly considered those transcripts. Therefore, we affirm.