26 P.3d 1214

David C. SODERLUND, Petitioner–
Appellant,

v.

ADMINISTRATIVE DIRECTOR OF THE
COURTS, State of Hawai'i,
Respondent–Appellee.

No. 23140.

Supreme Court of Hawai'i.

July 12, 2001.

Earle A. Partington, on the briefs, Honolulu, for petitioner-appellant.

Girard D. Lau, Deputy Attorney General, on the briefs, for respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that Respondent–Appellee Administrative Director of the Courts, State of Hawai'i (the Director)[1] is not required by Hawai'i Revised Statutes (HRS) § 286–260 (Supp.2000) or by District Court Rules of Civil Procedure (DCRCP) Rule 72 to respond to a petition for judicial review of the Director's hearing decision revoking a person's driver's license for driving under the influence of intoxicating liquor (DUI), or to appear at the judicial hearing therefor. However, if the Director chooses not to respond,

neither the foregoing statute nor rule allows the Director to file a motion for reconsideration of a district court decision reversing the Director's revocation decision. Consequently, the district court of the first circuit[2] (the court), was not authorized to reconsider its prior order reversing the license revocation of Petitioner–Appellant David C. Soderlund (Petitioner). We therefore vacate the court's January 21, 2000 amended decision, order and judgment affirming the October 11, 1999 findings of fact, conclusions of law, and decision of the hearing officer sustaining the revocation of Petitioner's driver's license. We remand the case to the court and instruct that it reinstate its December 1, 1999 decision and order reversing the hearing officer's said October 11, 1999 findings, conclusions, and decision.

I.

On August 7, 1999, Petitioner was arrested for DUI and issued a notice of administrative license revocation by the arresting officer.[3] On August 11, 1999, the Director filed his Notice of Administrative Review Decision sustaining the administrative revocation. On

---

1. Hawai'i Revised Statutes § 286–251 (Supp. 2000) states that "Director" means the administrative director of the courts or any other person within the judiciary appointed by the director to conduct administrative reviews of hearings or carry out other functions relating to administrative revocation under this part [(Part XIV entitled "Administrative Revocation of Driver's License and Motor Vehicle Registration")]. Hereinafter, "the Director" is used interchangeably to designate the administrative review officer. and the hearing officer.

2. District court judge Colette Garibaldi was the presiding judge in this case.

3. In regard to an arrest and the issuance of a revocation notice, HRS § 286–255(a) (Supp. 1999) provides in pertinent part as follows:

   **Arrest; procedures.** (a) Whenever a person is arrested for a violation of section 291–4 or 291–4.4, on a determination by the arresting officer that:
   (1) There was reasonable suspicion to stop the motor vehicle, ...; and
   (2) There was probable cause to believe that the arrestee was driving, operating, or in actual physical control of the motor vehicle while under the influence of intoxicating liquor;

the arresting officer immediately shall take possession of any license held by the person and request the arrestee to take a test for concentration of alcohol in the blood. The arresting officer shall inform the person that the person has the option to take a breath test, a blood test, or both. The arresting officer also shall inform the person of the sanctions under this part, including the sanction for refusing to take a breath or a blood test. *Thereafter, the arresting officer shall complete and issue to the arrestee a notice of administrative revocation and shall indicate thereon whether the notice shall serve as a temporary permit.*
(Emphasis added.)
   As to a notice of administrative revocation, HRS § 286–252 (1993) provides as follows:
   **Notice of administrative revocation; effect.** As used in this part, the notice of administrative revocation:
   (1) Establishes that the arrestee's driving privilege in this State shall be terminated thirty days after the date of arrest or such later date as is established by the director under section 286–259 if the director administratively revokes the arrestee's license;
   ... and
   (3) Serves as a temporary permit to drive as provided in section 286–255.

August 17, 1999, Petitioner requested an administrative hearing pursuant to HRS § 286–259 (Supp.1999).[4] The hearing was held on August 30, 1999 and was continued to September 10, 1999 and October 6, 1999. At the August 30, 1999 hearing, the hearing officer questioned the arresting officer.[5] On October 11, 1999, the hearing officer issued its findings of fact, conclusions of law, and a decision sustaining the revocation of Petitioner's driver's license for three months. The decision and order, referring to Petitioner as "the Arrestee," stated in part as follows:

### FURTHER FINDINGS OF FACT RELATING TO LICENSE REVOCATION

. . . .

5. The Arresting Officer . . . smelled a moderate to strong odor of an alcoholic beverage coming from within the vehicle.

6. The Arresting Officer further observed the Arrestee's physical signs of intoxication: the Arrestee's eyes were red and watery and the Arrestee appeared sluggish, moving slowly and having some difficulty with his documents.

7. Upon exiting the vehicle, the Arrestee lost his balance, nearly falling and the Arrestee used his vehicle for balance.

8. The Arresting Officer administered the Field Sobriety Test . . . to the Arrestee. The Arrestee showed signs of impairment on all phases of the test, and the Arresting Officer noted a moderate odor of

alcoholic beverage coming from the Arrestee.

. . . .

10. *The Arrestee was informed of . . . the sanctions for refusing to take [breath or blood] tests.*

11. The Arrestee elected to take a breath test.

. . . .

13. . . . . The Arrestee's breath alcohol concentration . . . was .273 on that test.

### CONCLUSIONS OF LAW RELATING TO LICENSE REVOCATION

. . . .

4. The Director concludes that Arrestee had a breath or blood alcohol concentration, as defined in HRS § 286–251, of .08 or more.

. . . .

6. The Director separately and independently concludes, by a preponderance of the evidence, that irrespective of the Arrestee's breath test result, the remainder of the record nevertheless reflects that the Arrestee drove, operated, or was in actual physical control, of the motor vehicle while under the influence of intoxicating liquor.

(Emphasis added). In connection with Finding No. 10, a Honolulu Police Department Form 396B, entitled "ADMINISTRATIVE DRIVER'S LICENSE REVOCATION

---

4. HRS § 286–259 stated in pertinent part as follows:

    **Administrative hearing.** (a) If the director administratively revokes the arrestee's license after administrative review, the arrestee may request an administrative hearing to review the decision within six days of the date the administrative review decision is mailed. The hearing shall be scheduled to commence no later than twenty-five days from the date the notice of administrative revocation was issued. . . .

5. The following exchange took place between the hearing officer and the arresting officer:

    Q. [HEARING OFFICER] Officer Yamaguchi, did you have a chance to look at this case file, this case file, before you came in?

    A. [ARRESTING OFFICER] Yes.

    Q. And you had submitted some documentation to our office, your arrest report, the HPD 396[B], and so forth?

    A. Yes, I did.

    Q. And you got to see the documents that you submitted?

    A. Yes, I did.

    Q. Do you confirm on the record the information that you submitted to the [Administrative Drivers License Revocation Office (ADLRO)], at this time?

    A. Yes.

    Q. Do you have anything that you want to add to this information?

    A. I'm sure that this is all the same throughout the department, but this is for District 3.

    Q. Okay. So you're talking about, now that you're saying, you're talking about your patrol, you're with a different district?

    A. Yes, I'm with District 4.

    Q. Okay. All right.

LAW" and made a part of the hearing file, indicated that the arresting officer had read the following to Petitioner:

> Pursuant to the Administrative Driver's License Revocation Law, I must inform you (arrestee) of the following:
>
> . . . .
>
> That if you refuse to take any tests the consequences are as follows:
>
> 1. If your driving record shows no prior alcohol enforcement contacts during the five years preceding the date of your arrest, *your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take a test and failed it*[.]

(Emphasis added.) The foregoing information imparted to Petitioner was subsequently determined to be inaccurate in *State v. Wilson*, 92 Hawai'i 45, 987 P.2d 268 (1999).

## II.

On October 20, 1999, Petitioner filed a petition for judicial review of the hearing decision in the court pursuant to HRS § 286–260 (1993 & Supp.2000) and DCRCP Rule 72. His statement of the case attached to the petition proffered several grounds for reversal. On the same day, a copy of the petition was served upon the Director by mail.

On October 28, 1999, this court filed its opinion in *Wilson, supra*, holding that, because a defendant's license could be revoked for up to one year for a non-first-time offender's failure of a blood or breath alcohol test, an arresting officer's advice that a "three month revocation . . . would apply" was inaccurate and misleading. According to *Wilson*, any resulting alcohol test must be suppressed. *See* 92 Hawai'i at 51, 54, 987 P.2d at 275, 277.

On November 10, 1999, Petitioner filed a brief in the court citing *Wilson* in support of

the proposition that "an informed consent from the [Petitioner] . . . is lacking here and the absence of such a consent mandates reversal." On the same day, a copy of the brief was served by mail upon the Director.[6] The Director did not respond to the petition or the brief.

On November 12, 1999, the Director indicated he received the brief.

On November 15, 1999, the court held a hearing on the petition. The Director did not appear.

On December 1, 1999, the court filed a written decision and order reversing the revocation. Applying *Wilson*, the court ruled that "the evidence does not support the finding that . . . Petitioner was fully informed of the sanctions under the Administrative Driver's License Revocation Law."

On December 6, 1999, the Director filed a motion for reconsideration of the court's December 1, 1999 decision and order. The motion maintained that the Director had "separately and independently conclude[d], by a preponderance of the evidence, that irrespective of [Petitioner]'s breath test result, the remainder of the record nevertheless reflects that [Petitioner] drove . . . the motor vehicle while under the influence of intoxicating liquor."

On December 9, 1999, Petitioner filed an opposition memorandum to the reconsideration motion. Relying on *Pancakes of Hawai'i, Inc. v. Pomare Properties Corp.*, 85 Hawai'i 286, 944 P.2d 83 (App.1997), he asserted that, inasmuch as the Director chose not to appear or file a brief and raised new arguments and evidence only after the court rendered a decision, the Director had "defaulted."

The Director's December 13, 1999 reply memorandum responded, *inter alia*, that the Director is "the decision[-]making body . . . and not an ordinary party that appears be-

---

6. While HRS chapter 286 says nothing about the attorney general's role, the Director is apparently represented by the attorney general in judicial review matters. *See* HRS § 26–7 (1993) (describing the functions and powers of the Department of the attorney general as including "prosecut[ing] cases involving violations of state laws . . . which are enforceable in the courts of the

State") and HRS § 28–1 (1993) (providing that "[t]he attorney general shall appear for the State personally or by deputy, in all the courts of record, in all cases criminal or civil in which the State may be a party, or be interested, and may in like manner appear in the district courts in such cases").

fore the decision[-]making body[;] ... [thus] it is a 'nominal appellee[.]'" Arguing that a district court's review under HRS § 286–260 is analogous to an appellate proceeding, the Director referred to Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(c), which states in part that "[a] nominal appellee need not file an answering brief." According to the Director, treating the Director other than as a nominal appellee would require a response to every appeal from an administrative decision.

On January 21, 2000, the court set aside its December 1, 1999 decision and order, filed an amended decision and order affirming revocation, and entered judgment thereon. It reasoned that, under *Wilson*, "the prosecution would not be prevented from relying upon ... relevant information [independent of and untainted by the blood/breath alcohol test] for the criminal offense of [DUI]."

On January 28, 2000, Petitioner filed a notice of appeal from the January 21, 2000 judgment.

### III.

■ "Review of a decision made by [a] court upon its review of an [administrative] decision is a secondary appeal. The standard of review is one in which this court must determine whether the court [under review] was right or wrong in its decision[.]" *Farmer v. Administrative Director of Court*, 94 Hawai'i 232, 236, 11 P.3d 457, 461 (2000) (internal quotation marks and citations omitted).

HRS § 286–260 governs judicial review by the district court of an administrative revocation of a driver's license by the Director and states in pertinent part as follows:

**Judicial review; procedure.** (a) If the director sustains the administrative revocation after administrative hearing, the arrestee may file a petition for judicial review within thirty days after the administrative hearing decision is mailed. *The petition shall be filed with the clerk of the district court* in the district in which the offense occurred and shall be accompanied by the required filing fee for civil actions.... *The petition shall state with specificity the grounds upon which the petitioner seeks reversal of the administrative revocation.*

(b) .... If the petitioner fails to appear without just cause, the court shall affirm the administrative revocation.

(c) The sole issues before the court shall be whether the director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record.

(Emphases added.) DCRCP Rule 72 sets forth the procedure for judicial review in the district court in similar terms, stating in pertinent part as follows:

**Judicial Review to a District Court.**

(a) **How Taken.** Where a right of redetermination or review in a district court is allowed by statute, any person adversely affected by the decision, order or action *of a governmental official or body other than a court, may appeal from such decision, order or action by filing a petition for judicial review in the district court having jurisdiction of the matter.* As used in this rule, the term "petitioner" means any person or persons filing a petition for judicial review, and *"respondent" means every governmental body or official (other than a court) whose decision, order or action is appealed from, and every other party to the proceedings.*

. . . .

(c) **Service.** Promptly after filing the petition for judicial review, *the petitioner shall serve a certified copy thereof upon each respondent.*

. . . .

(e) **Statement of Case.** The petition for judicial review shall include a short and plain statement of the case that *shall state with specificity the grounds upon which the petitioner seeks reversal of the administrative decision,* and a prayer for relief.

. . . .

(h) **Hearing.** The district court shall schedule the hearing on the petition as quickly as practicable, and the review shall

be on the record of the administrative hearing without taking additional testimony or evidence. If the petitioner fails to appear without just cause, the court shall find for the respondent. The sole issues before the court shall be whether the governmental official or body exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record.

(Emphases added.) DCRCP Rule 81 provides that the DCRCP "shall not apply to[ ] ... [j]udicial review pursuant to [DCRCP] Rule 72."

### IV.

■ Because "the [DCRCP] do not provide for a motion for reconsideration[,]" *State v. Wang*, 90 Hawai'i 441, 442, 978 P.2d 879, 880 (1999), and as indicated above, the DCRCP do not apply to judicial review under DCRCP Rule 72, Petitioner and the Director rely on other rules to support their positions. Depending on cases that discuss motions for reconsideration in the circuit court, Petitioner argues that the Director's motion was procedurally improper because "reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding[,]"[7] *Sousaris v. Miller*, 92 Hawai'i 505, 513, 993 P.2d 539, 547 (2000)

(citations and footnote omitted), and the Director chose not to raise his objections at the petition hearing.[8] The Director contends that the court's judicial review was equivalent to an appellate proceeding and that HRAP Rule 40 applies by analogy and, therefore, his motion was procedurally proper. Inasmuch as we dispose of this case on the reasons set forth *infra*, we find it unnecessary to address these contentions.

### V.

■ We cannot agree, as the Director maintains, that as a "nominal appellee," he was not required to answer Petitioner's petition or appear at the hearing. The term "nominal appellee" or "nominal party" has not been expressly defined in the rules or by statute. "We may '[r]esort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms [not defined].'" *State v. Kalama*, 94 Hawai'i 60, 63 n. 6, 8 P.3d 1224, 1227 n. 6 (2000) (quoting *State v. Chen*, 77 Hawai'i 329, 337, 884 P.2d 392, 400 (App.1994) (internal quotation marks and citations omitted)). A "nominal defendant" is defined as

[a] person who is joined as defendant in an action, not because he [or she] is immediately liable in damages or because any specific relief is demanded as against him [or her], but because his [or her] connection with the subject-matter is such that the plaintiff's action would be defective,

---

7. The Hawai'i Rules of Civil Procedure (HRCP) ... do not expressly afford a party the right to file a motion for reconsideration. *Cf.* [HRAP] Rule 40(a); Hawai'i Family Court Rules ... Rule[ ] 59(b). Hawai'i appellate courts, however, have recognized that a "motion for reconsideration" can be filed pursuant to HRCP Rule 59(e) (motion to alter or amend judgment) or HRCP Rule 60 (motion for relief from judgment or order). *Bank of Hawai'i v. Kunimoto*, 91 Hawai'i 372, 374 n. 1, 984 P.2d 1198, 1200 n. 1, *reconsideration denied*, 91 Hawai'i 372, 984 P.2d 1198 (1999) (citations omitted).

8. Petitioner asserts that "granting the Administrative Director's improper motion for reconsideration[ ]" violated the doctrine of *"stare decisis."* However, "'[s]tare decisis relates to the effect of legal propositions announced in prior adjudications upon subsequent actions which involve similar questions between strangers to the

proceedings in which the adjudications were made.'" *Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.*, 76 Hawai'i 454, 470, 879 P.2d 1037, 1053 (1994) (quoting *State v. Magoon*, 75 Haw. 164, 186, 858 P.2d 712, 723 (internal quotation marks and emphasis omitted), *reconsideration denied*, 75 Haw. 580, 861 P.2d 735 (1993) (Klein, J. concurring and dissenting)). Under the doctrine of *stare decisis*, "'where a [legal] principle has been passed upon by the court of last resort, it is the duty of all inferior tribunals to adhere to the decision ..., until the decision has been reversed or overruled by the court of last resort or altered by legislative enactment.'" *Magoon, supra* (quoting *Robinson v. Ariyoshi*, 65 Haw. 641, 653, 658 P.2d 287, 297 (1982) (citations omitted), *reconsideration denied*, 66 Haw. 528, 726 P.2d 1133 (1983)). The doctrine does not apply to a motion for reconsideration, because it is not a "subsequent action[ ]," but, rather, part of the subject proceeding.

under the technical rules of practice, if he [or she] were not joined.

*Black's Law Dictionary* 1049 (6th ed.1990). In *Brown v. KFC Nat'l Management Co.*, 82 Hawai'i 226, 921 P.2d 146, *reconsideration denied*, 82 Hawai'i 360, 922 P.2d 973 (1996), former employees of KFC, Alabanza and Brown, and their wives brought a suit against KFC for employment discrimination. KFC filed a motion to stay the action and compel arbitration of all the Alabanzas' claims based on an arbitration agreement in Alabanza's employment application with KFC. The circuit court denied the motion and KFC appealed. This court noted that "[t]he Browns are merely nominal appellees with respect to this appeal." 82 Hawai'i at 230 n. 5, 921 P.2d at 150 n. 5.

Based on the foregoing, we do not believe the terms "nominal party" or "nominal appellee" accurately characterize the Director's role on judicial review. The specific relief demanded by Petitioner is a reversal of the Director's decision. As contended by Petitioner, if the Director were in fact a "nominal party" or "nominal appellee," he would not have any interest in defending the revocation by moving for reconsideration in the district court or in appearing on the appeal before us. *Cf. Bumberger v. Insurance Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir.1991) ("Nominal parties [for diversity jurisdiction purposes] are generally those without a real interest in the litigation.") (citing *Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir.1985)).[9]

Furthermore, HRS § 286–260 and DCRCP Rule 72 make no mention of "nominal appellee(s)." Rather, under DCRCP Rule 72, the Director is a "respondent," that

is, the "governmental ... official (other than a court) whose decision, order or action is appealed from." The term "respondent" "in appellate practice" is defined as "the party who contends against an appeal; the party against whom the appeal is taken, *i.e.* the appellee." *Black's Law Dictionary* 1312. The Director's role at the judicial review level, then, is not merely that of a "nominal" party, but that of a respondent.[10]

## VI.

■ We agree that the Director was not compelled to respond to the petition or brief or to appear at the hearing on the petition, but not for the reasons the Director propounds. While we do not doubt that a district court may in its discretion require briefs to be filed in DCRCP Rule 72 proceedings to aid it in the determination of an appeal, strictly speaking, DCRCP Rule 72 does not require the filing of a response to the petition, *see* DCRCP Rule 72(b) and (c), or the appearance of the respondent at the hearing on the petition. *See* DCRCP Rule 72(h). Accordingly, the Director is not mandated under DCRCP Rule 72 to appear or to respond, although, as a "respondent," the Director is subject to the requirements of DCRCP Rule 72(d)(2) if he decides to present a counter-designation of matters to be filed as part of the record on appeal. The Director hence had the option to appear and respond to Petitioner's brief or not to do so.

DCRCP Rule 72 does instruct that "[i]f the *petitioner* fails to appear without just cause, the court shall find for the respondent," DCRCP Rule 72(h) (emphasis added), apparently without regard to the correctness of the

---

9. In *Biscoe v. Tanaka*, 76 Hawai'i 380, 878 P.2d 719 (1994), the appellant driver challenged the preparation of the revocation hearing transcript by an ADLRO employee as done "by a 'party in interest.'" *Id.* at 386, 878 P.2d at 725. This court said that "[e]ven assuming that this is true, ... [and a]lthough the Administrative Director of the Courts is a nominal party when judicial review is sought at the district court, there is no evidence that the ADLRO officers and employees have an interest in the outcome of the proceedings." *Id.* The reference to "nominal party" in this context was dicta. No mention was made of DCRCP Rule 72.

10. The Director declares that he was "prohibited" from filing a response to Petitioner's brief. According to the Director, the ADLRO did not receive Petitioner's brief until November 12, 1999 because the brief had been served by mail on the ADLRO on November 10, 1999 and November 11, 1999 was a federal holiday. The Director contends that, by order of the court, his brief was due November 10, 1999, *i.e.*, "no later than seven (7) days after the date on which the record is filed," and thus that he could not timely respond to Petitioner's brief. However, there was ample time for the Director to appear at the hearing scheduled on November 15, 1999 to present his objections.

administrative revocation appealed. The Rule does not direct that a *respondent's* failure to appear will result in a finding for the petitioner.[11]

## VII.

■ The Director stated without any elucidation that if he were treated as other than a nominal party, he would be required to respond to every appeal. Under Rule 72(c), a petitioner is required to serve his or her petition on the Director. Thus, the Director has prior notice of the grounds raised in every appeal from a revocation. The Rule, then, affords the Director ample leeway in the prudent exercise of his discretion to determine at which appeal hearings he should appear. In this case, he had prior notification that the *Wilson* defense was raised. Moreover, he could have advanced the same objections set forth in his reconsideration

motion at the prior review hearing.[12] He chose not to do so.

To the extent the Director decides, as he apparently has, to respond only after the petition hearing and a resulting adverse decision, he casts upon a petitioner and the district court the burden of at least an additional hearing and of the attendant unnecessary expense and delay. In our view such a practice is not permitted by statute or rule and is unfair to petitioners. The practice also invites, as in this case, avoidable appeals. Accordingly, we vacate the court's January 21, 2000 decision, order, and judgment and remand the case for disposition as set forth herein.

---

11. Because the petitioner is the party moving for judicial review, there is a rational basis for this disparate treatment.

12. The Director's argument that Petitioner did not raise the *Wilson* issue below is arguable. Among the grounds listed in support of the petition was that "Petitioner was not properly informed of all of the sanctions for refusing a blood or breath test at the time of his arrest." Assuming *arguendo*, this ground did not encompass the *Wilson* defense, that would only be an alternative ground for reversal of the district court's December 1, 1999 decision and order that could have been raised at the petition hearing. This contention does not address the Director's practice of appearing only subsequent to an adverse decision, resulting in additional expense and delay.