LAW LIBRARY

**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

NO. 29918

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ROBERT M. OYADOMARI, JR., Petitioner-Appellant,

v.

ADMINISTRATIVE DIRECTOR OF THE COURTS, STATE OF HAWAI'I,
Respondent-Appellee

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT,
HONOLULU DIVISION
(CASE NO. 1DAA-09-0005)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Petitioner-Appellant Robert M. Oyadomari, Jr.
(Oyadomari) appeals from the Decision and Order Affirming
Administrative Revocation filed on May 11, 2009 in the District
Court of the First Circuit, Honolulu Division (district court).[1]

On appeal, Oyadomari contends the district court erred
in concluding that (1) the denial of the subpoena duces tecum
(SDT) by the Administrative Driver's License Revocation Office
(ADLRO) was harmless error and (2) there was substantial evidence
to support the determination of the ADLRO Hearing Officer
(Hearing Officer) that there was reasonable suspicion of a
traffic violation to warrant the police officer's stop of
Oyadomari.

**I. BACKGROUND**

Oyadomari was arrested on November 26, 2008 by Officer
Moszkowicz. The administrative hearing was originally scheduled

---

[1] The Honorable William A. Cardwell presided.

for December 19, 2008. On either December 18 or 19, 2008, Oyadomari requested a continuance to allow counsel to investigate and "to determine proper subpoena request." ADLRO granted the continuance. On December 23, 2008, Oyadomari submitted to ADLRO a "Request for Subpoenas To Be Issued," requesting that subpoenas be issued to Officers Kau and Moszkowicz, and an SDT for "[a]ny and all audio and video recording of the stop and/or arrest of Oyadomari." On December 26, 2008, ADLRO granted the issuance of subpoenas to the officers, but denied the issuance of the SDT.

At the ADLRO hearing, Officer Moszkowicz testified that on November 26, 2008 at approximately 9:30 p.m., he was on North King Street between Winant Street and Haka Drive setting up flares for a roadblock. At that location, there are three westbound lanes on North King Street. He first saw Oyadomari when Oyadomari was on King Street at the intersection where Houghtailing becomes Waiakamilo (Waiakamilo intersection). His attention was drawn to Oyadomari because Oyadomari's vehicle was the first one to approach as Officer Moszkowicz was setting out the flares. Officer Moszkowicz observed Oyadomari make a U-turn just past the intersection of North King Street and Winant Street. Oyadomari was unable to complete the U-turn and had to stop, reverse, and then proceed forward. Oyadomari came to a stop at the stop light at the Waiakamilo intersection.

Officer Moszkowicz radioed Officer Kau and said that he had observed Oyadomari execute a U-turn. Officer Kau acknowledged that he had also seen the U-turn. Officer Kau effected the stop of Oyadomari. Officer Moszkowicz testified that he believed the U-turn executed by Oyadomari violated an ordinance prohibiting U-turns on highways that have three or more lanes unless expressly permitted by a sign.

Oyadomari failed the Standardized Field Sobriety Test. Officer Kau told Officer Moszkowicz that Oyadomari also failed the Preliminary Alcohol Screening Test. Oyadomari refused to take a breath or blood test.

Officer Kau testified that he presently has, and did have at the time of the stop, a camera in his car that would have recorded a video of his conversation with Oyadomari (the Recording). However, he does not keep a video if there are no complaints and he records over it. He testified that "three weeks is pretty much the maximum that it will hold."

Oyadomari asked to subpoena the Recording and for a continuance to allow him an opportunity to view the Recording. Officer Kau testified that the camera is his personal camera and the Recording of the Oyadomari incident had already been lost. The hearing was stopped to allow Officer Kau to go out to his car and check the camera. Officer Kau reported that the incident was not on the camera.

Oyadomari testified that he did not make a U-turn, but turned left into a parking lot to avoid the roadblock.

In the February 23, 2009 Findings of Fact, Conclusions of Law and Decision, the Hearing Officer found that after the arrest of Oyadomari, Oyadomari refused to submit to a breath or blood test. The Hearing Officer concluded that Oyadomari had had three alcohol enforcement contacts within the prior five years and revoked his driver's license for life.

The Hearing Officer also found that ADLRO had properly denied the pre-hearing request for an SDT for any and all Recordings of the stop and/or arrest of Oyadomari because (1) there was no evidence at that stage of the proceedings of the existence of any recordings and therefore the request was based

3

upon mere speculation; (2) the Recording was only of Officer Kau's initial contact with Oyadomari and did not include the alleged traffic violation, stop, or arrest and therefore was not relevant; and (3) the Recording had been erased by the time the request was made.

On appeal to the district court, the court affirmed the administrative revocation. In its May 11, 2009 Decision and Order Affirming Administrative Revocation (D&O), the district court held that "ADLRO abused it [sic] discretion in denying the request for [an SDT] directed only to officers who submitted sworn statements. The Hearing Officer erred in ruling that the denial was proper." However, the district court also found that the police officer testified and the Hearing Officer found that the Recording no longer existed after a maximum of three weeks. The district court found that the Recording had been erased by the time Oyadomari submitted the request for an SDT and therefore the error in denying the request for the SDT was harmless. The district court also determined that there was sufficient evidence to support the Hearing Officer's determination of reasonable suspicion to justify the stop of Oyadomari based upon an observed traffic violation.

Oyadomari timely appealed.

## II. STANDARD OF REVIEW

This is a secondary appeal from the district court's review of the administrative revocation of a driver's license. We review the district court's decision under the right/wrong standard. Brune v. Administrative Director of Courts, State of Hawai'i, 110 Hawai'i 172, 176-177, 130 P.3d 1037, 1041-42 (2006). The district court's review of the administrative director's decision is limited to whether the director:

      (1)    Exceeded constitutional or statutory authority;

      (2)    Erroneously interpreted the law;

(3)    Acted in an arbitrary or capricious manner;

(4)    Committed an abuse of discretion; or

(5)    Made a determination that was unsupported by the evidence in the record.

Hawaii Revised Statutes (HRS) § 291E-40(c) (2007 Repl.).

### III.  DISCUSSION

### A.    ADLRO'S DENIAL OF THE SDT WAS HARMLESS ERROR.

The Hearing Officer determined that ADLRO had not erred by not issuing an SDT for the Recording because, inter alia, the Recording did not exist at the time of the initial request for it.  The district court found that although ADLRO should have approved the December 23, 2008 request for the SDT, the non-existence of the Recording at the time of the request made the error harmless.

The "Request for Subpoenas To Be Issued" sought an SDT for "[a]ny and all audio and video recording of the stop and arrest of Oyadomari."  In Biscoe v. Tanaka, 76 Hawai'i 380, 878 P.2d 719 (1994), the Hawai'i Supreme Court affirmed the denial of a request for an SDT where "[t]he request merely named the Custodian of Records and provided an address."  Id. at 385, 878 P.2d at 724.  The Hawai'i Supreme Court held:

> In order to ensure that an arrestee's rights are adequately protected, the director should issue all requested subpoenas unless the witness does not possess any relevant evidence or the subpoena request is otherwise deficient.  If a proper request is made for a subpoena for a relevant witness, the refusal to issue the subpoena would constitute an abuse of discretion.

Id.  By stating the subject matter of the recordings sought and the relevancy to the purpose of the hearing being apparent, Oyadomari's request appears to have been explicit as to its object and not otherwise deficient so that the request should have been granted.

However, even if the request had been granted, the evidence supported the Hearing Officer's determination that at the time the SDT was requested, Officer Kau no longer possessed a relevant Recording. Officer Kau testified that he retained video recordings no more than three weeks (21 days) after the event. The incident took place on November 26, 2008. The request for the SDT was made on December 23, 2008. The period of time that had elapsed between the date of the incident and the request for the SDT was 27 days or 6 days longer than the maximum period that Officer Kau retained his video recordings. There was substantial evidence that no Recording existed at the time the request was made, and, therefore, the issuance of the SDT would have been futile and the error in denying the SDT, harmless. The district court was therefore right in not reversing the determination of the Hearing Officer based upon the harmless error.

**B. THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE HEARING OFFICER'S DETERMINATION THAT THERE WAS REASONABLE SUSPICION OF A TRAFFIC VIOLATION TO WARRANT THE POLICE OFFICER'S STOP OF OYADOMARI.**

The district court was correct in concluding there was reasonable suspicion of a traffic violation to justify a traffic stop of Oyadomari. Officer Kau had reasonable suspicion of a traffic violation to justify a stop of Oyadomari based upon Officer Kau's observation of Oyadomari executing a U-turn on a highway with three or more lanes.

Officer Moszkowicz testified that he observed Oyadomari execute a U-turn and he radioed Officer Kau to inform him of his observations. Officer Kau acknowledged that he also saw Oyadomari execute the U-turn. Officer Moszkowicz testified that Oyadomari was on a three-lane highway.

Revised Ordinances of Honolulu (ROH) § 15-8.4 provides:

**Sec. 15-8.4   Limitations on U-turns.**

The driver of any vehicle shall not turn such vehicle so as to proceed in the opposite direction upon any street in a business district, upon any highway[2] with three or more lanes, or at any intersection where traffic is controlled by traffic signal lights, except as otherwise permitted by official signs and markings.

(Footnote not in original.)

Based on ROH § 15-8.4, it was reasonable for Officers Moszkowicz and Kau to believe that Oyadomari had committed a traffic violation.

Oyadomari argues that the U-turn was not illegal because HRS § 291C-82(c) (2007 Repl.) requires the posting of a sign stating that U-turns are prohibited and there was no evidence of such a sign.   HRS § 291C-82 provides:

§291C-82   **Turning so as to proceed in the opposite direction.**   (a)   No vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to or near the crest of a grade, where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within five hundred feet.

(b)   In addition to the prohibition in subsection (a), the director of transportation is authorized to and the counties may by ordinance with respect to highways under their respective jurisdictions prohibit the turning of any vehicle so as to proceed in the opposite direction on the highway at any location where such turning would be dangerous to those using the highway or would unduly interfere with the free movement of traffic.

(c)   The director of transportation and the counties by ordinance with respect to the highways under their respective jurisdictions shall place signs which are clearly visible to an ordinarily observant person prohibiting the turning of a vehicle to proceed in the opposite direction.

---

[2]   ROH Sec. 15-2.23 defines "highway":

**Sec. 15-2.23   Streets and related terms.**

. . . .

"Street or highway" means the entire width between the property lines of every way publicly owned and maintained when any part thereof is open to the use of the public for purposes of vehicular travel . . . .

> The signs shall be official signs and no person shall turn any vehicle in violation of the restrictions stated on such signs.

Reasonable suspicion does not require definitive proof or even probable cause to believe that a violation has occurred. Because the mere possibility that Oyadomari might not have been guilty based upon HRS § 291C-82(c) would not divest the police officers of a reasonable suspicion of a traffic violation, we express no opinion on Oyadomari's interpretation of HRS § 291C-82(c). "[R]easonable suspicion could still warrant effecting a traffic stop of the driver, despite the *possibility* of innocence . . . ." State v. Spillner, 116 Hawai'i 351, 361, 173 P.3d 498, 508 (2007) (emphasis in original). Officers Moszkowicz and Kau had sufficient information to support a reasonable suspicion of a violation of the plain language of ROH § 15-8.4, and therefore the traffic stop of Oyadomari was proper.

## IV.  CONCLUSION

The Decision and Order Affirming Administrative Revocation filed on May 11, 2009 in the District Court of the First Circuit, Honolulu Division, is affirmed.

DATED:  Honolulu, Hawai'i, July 26, 2010.

On the briefs:

Kenneth J. Shimozono
(Takemoto & Shimozono)
for Petitioner-Appellant.

Dorothy Sellers,
Solicitor General,
Rebecca A. Copeland,
Deputy Solicitor General,
for Respondent-Appellee.

Chief Judge

Associate Judge

Associate Judge

8